Docket No. 108441.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. SAMUEL ABSHER, Appellee.

*Opinion filed May 19, 2011.*

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Thomas, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion.

## OPINION

Following a stipulated bench trial, the circuit court of St. Clair County convicted defendant, Samuel Absher, of unauthorized possession of a controlled substance (720 ILCS 570/402(c) (West 2002)). The appellate court reversed. No. 5–04–0729 (unpublished order under Supreme Court Rule 23). We granted the State's petition for leave to appeal and now reverse the judgment of the appellate court.

## I. BACKGROUND

On March 18, 2004, pursuant to a fully negotiated guilty plea, defendant was convicted in the circuit court of St. Clair County of retail theft. In exchange for his plea, defendant was placed on

probation for a period of two years. The agreement provided that defendant was to serve the first year in accordance with St. Clair County's "Intensive Probation Supervision" program, followed by a second year of "standard" probation. During the period of "intensive" probation, defendant agreed to abide by a number of conditions in addition to the general probation restrictions. The probation order stated, in relevant part:

>"9. *** [Y]ou shall further obey and comply with such other reasonable rules and regulations as are defined in article #10.

>10. SPECIFIC RULES AND REGULATIONS OF INTENSIVE PROBATION SUPERVISION:

>* * *

>(c) submit to searches of your person, residence, papers, automobile and/or effects at any time such requests are made by the Probation Officer, and consent to the use of anything seized as evidence in Court proceedings."

On May 17, 2004, a St. Clair County probation department officer–assisted by officers from the Belleville police department–searched defendant's residence pursuant to this probation condition and discovered cocaine and marijuana. Defendant was thereafter charged with one count of felony unauthorized possession of a controlled substance (720 ILCS 570/402(c) (West 2002)).[1]

Prior to trial, defendant filed a motion to suppress the evidence recovered from his residence. Defendant contended that although he agreed to the suspicionless search condition contained in article 10(c) of the probation order, the search nevertheless violated his right to privacy in his residence because it was not based upon reasonable suspicion and he had not consented to the officers' entry.

At the suppression hearing, St. Clair County probation officer E.J. Jarvis testified that on March 18, 2004, he met with defendant and

---

[1]Defendant was also charged with one count of misdemeanor possession of cannabis (720 ILCS 550/4(c) (West 2002)). This charge was later dismissed by the State.

-2-

explained to him the conditions of his probation, including the provision contained in article 10(c) allowing suspicionless searches of defendant's residence. Jarvis stated that defendant posed no questions regarding the agreement as a whole nor with respect to any specific provision prior to signing it. In relation to Jarvis' testimony, defense counsel stipulated that there was no dispute that defendant had knowingly and voluntarily agreed to the intensive probation conditions.

George Chester, the supervisor of the intensive probation program at the St. Clair County probation department, testified to observing defendant on May 17, 2004, when defendant visited the probation office for a regularly scheduled meeting. Defendant's conduct led Chester to suspect that defendant may have been under the influence of drugs. Based upon this observation, combined with a review of defendant's file, Chester believed that defendant "was in possession of a controlled substance at his residence." Pursuant to the search condition contained in article 10(c) of defendant's probation order, Chester contacted the State's Attorney's office and obtained authorization to search defendant's home. Chester then arranged for officers from the Belleville police department to accompany a probation officer in executing the search of defendant's residence later that evening.

St. Clair County Probation Officer Burdett Rice testified that Chester instructed him to search defendant's home later that evening. Rice and officers from the Belleville police department arrived at defendant's residence at approximately 10 p.m. Rice knocked on the door and informed defendant that the officers were there to perform a "routine search." Defendant replied, "no, you are not tonight," and tried to close the door. Rice prevented defendant from closing the door, and forced entry into defendant's home. The officers secured defendant and searched the premises, recovering a bag of crack cocaine, a bag of marijuana, and several lighters and pipes.

In denying defendant's suppression motion, the circuit court observed that "defendant cannot, at his convenience and perhaps because he is in an untenable position, make a declaration that he revokes a term of his probation." The terms of the probation agreement, combined with the testimony of Chester, rendered the search reasonable.

Thereafter, a stipulated bench trial was conducted, and defendant was found guilty of unauthorized possession of a controlled substance (720 ILCS 570/402(c) (West 2002)), and sentenced to two years' imprisonment.

The appellate court reversed. No. 5–04–0729 (unpublished order under Supreme Court Rule 23). Relying upon our decision in *People v. Lampitok*, 207 Ill. 2d 231 (2003), which held that a search of a probationer's residence must be supported by reasonable suspicion, the panel determined that the warrantless and suspicionless search of defendant's home was improper, and that the circuit court erred in denying defendant's suppression motion.

The State filed a petition for leave to appeal to this court. Although we denied the State's petition, we directed the appellate court, pursuant to our supervisory authority, to vacate its order and reconsider its ruling in light of *People v. Wilson*, 228 Ill. 2d 35 (2008), which was issued during the pendency of this appeal and held that the fourth amendment allows a suspicionless search of a parolee.[2] The appellate court again reversed the circuit court's denial of defendant's suppression motion. No. 5–04–0729 (unpublished order under Supreme Court Rule 23). The panel held that "*Wilson* does not change the *Lampitok* test for determining the reasonability for a search of a probationer's residence."

We granted the State's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Aug. 15, 2006).

## II. ANALYSIS

When reviewing a circuit court's ruling on a motion to suppress evidence, that ruling is assessed under the two-part test adopted by the Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 699 (1996). *People v. Harris*, 228 Ill. 2d 222, 230 (2008). The circuit court's factual findings are upheld unless they are against the manifest weight of the evidence. *People v. Sorenson*, 196 Ill. 2d 425, 431

---

[2]What was referred to as "parole" in Illinois prior to February 1, 1978, is now termed "mandatory supervised release" (MSR). 730 ILCS 5/5–8–1(d) (West 2006); see also *Wilson*, 228 Ill. 2d at 37 n.1.  For clarity, Illinois defendants on MSR shall be referred to as "parolees" in this opinion.

(2001). The reviewing court then assesses the established facts in relation to the issues presented and may draw its own conclusions in deciding what relief, if any, should be granted. *Harris*, 228 Ill. 2d at 230. Accordingly, this court reviews *de novo* the ultimate legal question of whether suppression is warranted. *People v. Luedemann*, 222 Ill. 2d 530, 542-43 (2006).

The fourth amendment to the United States Constitution guards the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV; accord Ill. Const. 1970, art. I, §6. A "search" occurs when "an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Although the fourth amendment protects an individual's privacy in a variety of settings, "[i]n none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home." *Payton v. New York*, 445 U.S. 573, 589 (1980). Because one's right to retreat into his or her home without unreasonable government interference is a core principle of the fourth amendment (*Kyllo v. United States*, 533 U.S. 27, 31 (2001)), law enforcement officers generally may not enter, much less search, a person's home without a warrant absent exigent circumstances. *Payton*, 445 U.S. at 590.

The Supreme Court, however, has set forth limited exceptions to the warrant requirement. For example, consent has long been an exception to the need for a search warrant. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). In addition, a warrantless search may be considered reasonable upon a showing of "special law enforcement needs, diminished expectations of privacy, [and] minimal intrusions." *Illinois v. McArthur*, 531 U.S. 326, 330 (2001). Indeed, where an individual–such as defendant–is serving a term of probation, the restrictions placed upon his conduct due to the terms of his probation agreement results in his having a "significantly diminished" expectation of privacy. *United States v. Knights*, 534 U.S. 112, 119-20 (2001).

The State contends that because defendant, as part of a fully negotiated guilty plea, freely agreed to the suspicionless search condition contained in article 10(c) of his probation order, he thereby knowingly waived his rights under the fourth amendment to challenge

the reasonableness of any search conducted in accordance with this provision. Although the State acknowledges that *Lampitok* held that the specific probation search condition in that case did not constitute such a waiver, it asserts that applying that holding under these facts provides defendant with the benefit of the bargain, *i.e.*, serving a term of probation rather than imprisonment, but strips the State of the benefit that made probation rather than imprisonment a mutually advantageous option: its ability to closely supervise defendant to ensure successful completion of his probation period and the need to protect the public while defendant is on probation. Accordingly, the State requests that we revisit this issue, and adopt the holding of the United States Court of Appeals for the Seventh Circuit in *United States v. Barnett*, 415 F.3d 690 (7th Cir. 2005), which concluded that a probationer's agreement to the identical suspicionless search condition at issue in this appeal constituted a prospective waiver of his privacy rights. We agree with the State.

The facts in *Barnett* mirror those in the instant appeal. Barnett, similar to defendant, pled guilty to criminal offenses in the circuit court of St. Clair County. *United States v. Barnett*, No. 03–CR–30170, 2004 U.S. Dist. LEXIS 3089, at 2 (S.D. Ill. Feb. 27, 2004). As part of his fully negotiated guilty plea, Barnett–like defendant–agreed to abide by certain conditions of "intensive probation supervision" in lieu of prison, including the identical suspicionless search provision at issue in this appeal, which was also labeled as article 10(c) in Barnett's probation order. *Id*. at 2-3. Further, like defendant, Barnett's behavior during a visit to the St. Clair County probation office was observed by Chester, who believed it indicated Barnett was involved in illegal activity. *Id*. at 4. Again, mirroring the instant appeal, Chester looked into Barnett's criminal background, determined that illegal contraband or activity was to be found at Barnett's home, and directed a probation officer to search Barnett's residence later that evening. *Id*. That officer, accompanied by two sheriff's department deputies, conducted a search of Barnett's home and found weapons, which led to Barnett facing federal charges for being a felon in possession of a firearm. *Id*. at 5. Barnett filed a motion to suppress evidence, alleging that the search violated the fourth amendment because it was conducted without a warrant and the officers had neither probable cause nor reasonable suspicion that

he was involved in criminal activity or conduct which violated the terms of his probation. *Id*. at 1-2.

The United States district court rejected Barnett's arguments. Instead, the court agreed with the government that, by accepting the terms of intensive probation supervision as part of his fully negotiated guilty plea, Barnett voluntarily and knowingly waived his fourth amendment rights in exchange for not having to serve time in prison. *Id*. at 7-11. Accordingly, the district court denied Barnett's suppression motion.

The Seventh Circuit affirmed. The court first noted that the Supreme Court has made it clear that where a probationer accepts a broad probation condition–such as in the matter at bar–he therefore has a significantly diminished expectation of privacy. *Barnett*, 415 F.3d at 691 (citing *Knights*, 534 U.S. at 119, 122). A probationer may waive this already diminished expectation of privacy, according to *Barnett*, "provided that the waiver is knowing and intelligent." *Id*.

*Barnett* grounded this holding in its observation that plea bargains are a form of contract, and "like other contracts are presumed to make both parties better off and do no harm to third parties." *Id*. at 692. The court explained the benefits reaped by both Barnett and the State as a result of their agreement:

> "Barnett didn't want to go to prison. He preferred to sacrifice the limited privacy to which he would have been entitled *** just as convicted defendants prefer home confinement to confinement in a jail or prison even if the home confinement involved monitoring the defendant's activities inside the home and thus invades his privacy. And since imprisonment is a *greater* invasion of personal privacy than being exposed to searches of one's home on demand, the bargain that Barnett struck was not only advantageous to him but actually more protective of Fourth Amendment values than the alternative of prison would have been. It was also advantageous to the government, which wouldn't have agreed to it otherwise. ***
>
> *** Nothing is more common than an individual's consenting to a search that would otherwise violate the Fourth Amendment, thinking that he will be better off than he would be standing on his rights. Often a big part of the value of a right is what one can get in exchange for giving it up. Here,

given the alternative facing him of a prison sentence, Barnett gave up nothing." (Emphasis in original.) *Id*. at 691-92.

The court also rejected Barnett's contention that enforcing a blanket consent invites abuse on the part of law enforcement, stating that this not only ignores the even greater deprivation of privacy Barnett faced if he were to be imprisoned, but also that because a plea bargain is a contract, it contains implicit terms which necessarily prevent absurd results. The court found that the purpose of the waiver "was not to permit probation officers to harass probationers, but to excuse the officers from having to justify a search by establishing that it was based on probable cause, suspicion, or some other standard that might invite litigation," and that it is reasonable to assume that "the 'contract' implicitly forbids–equivalently, the waiver of Fourth Amendment rights does not extend to–searches that have no possible law-enforcement objective, or that so far exceed any legitimate enforcement needs as to compel an inference that the purpose and only effect were harassment." *Id*. at 692. Accordingly, the Seventh Circuit affirmed the district court's denial of Barnett's suppression motion.

*Barnett*'s contract law analysis and conclusion is supported by our own precedent. Beginning with our 1996 decision in *People v. Evans*, 174 Ill. 2d 320 (1996), we have repeatedly held that fully negotiated guilty pleas such as the one at bar are governed by principles of contract law. Accordingly, we have determined that to allow a defendant to unilaterally modify the terms of a fully negotiated plea agreement while holding the State to its part of the bargain "flies in the face of contract law principles" (*id*. at 327), because "the guilty plea and the sentence 'go hand in hand' as material elements of the plea bargain" (*id*. at 332). Consequently, in order to avoid " 'gamesmanship of a most offensive nature' " (*id*. at 327), we held that a defendant may not seek to unilaterally reduce his sentence while holding the State to its part of the bargain (*id*.). Applying contract principles, we determined that a defendant, therefore, may seek to modify the terms of a fully negotiated guilty plea only by withdrawing that plea and vacating the judgment, thereby returning the parties to

the status quo ante. *Id*. at 332.[3] Subsequent to *Evans*, we have repeatedly held that it is the existence of a sentencing concession on the part of the State which triggers the application of contract principles. See, *e.g.*, *People v. Morris*, 236 Ill. 2d 345 (2010) (noting that *Evans* held that under principles of contract, both the State and defendant are bound to the terms of a plea agreement); *People v. Diaz*, 192 Ill. 2d 211 (2000) (principles of contract law set forth in *Evans* apply where State agreed not to seek extended-term sentences); *People v. Linder*, 186 Ill. 2d 67 (1999) (contract principles discussed in *Evans* apply where defendant pled guilty in exchange for a cap on the length of his sentence); *People v. Clark*, 183 Ill. 2d 261 (1998) (*Evans*' contract analysis applies where defendant negotiated his guilty plea, but parties disagreed on whether sentences would be served consecutively); *c.f. People v. Lumzy*, 191 Ill. 2d 182 (2000) (*Evans*' contract principles do not apply where the agreement concerns only charges and not sentences).

We find this case to be analogous to *Evans* and, therefore, similarly governed by principles of contract law. Here, defendant and the State entered into a fully negotiated plea agreement in which defendant pled guilty to a charge in exchange for the State's recommendation of a specific sentence: two years' probation, with the first year being "intensive." Faced with the possibility of imprisonment and a complete loss of freedom and privacy rights, defendant opted to avoid incarceration and agree to probation, including a year of the more restrictive "intensive" version and its greater invasion of privacy. This bargain was advantageous to defendant, as he avoided jail time and gave up nothing by agreeing to probation and its restrictions. The bargain was also advantageous to the State, in that it assured that defendant was required to comply with the more restrictive conditions of intensive probation for the first year. It is undisputed that the agreement was explained to defendant, he understood its provisions

---

[3]We contrasted the negotiated plea at issue with an "open" plea, in which a defendant pleads guilty without receiving any promises from the State in return. *Evans*, 174 Ill. 2d at 332. We held that in the case of an open plea, because the State offers the defendant no inducements to plead guilty, defendants who enter such pleas may challenge their sentences without being required to also withdraw their guilty pleas. *Id*.

and he freely signed the form.

Defendant's actions in subsequently challenging the validity of the search of his home conducted pursuant to article 10(c) of his probation agreement are analogous to those of a defendant who enters into a fully negotiated guilty plea and thereafter seeks to unilaterally reduce his sentence by filing a motion for reconsideration without withdrawing the plea. In both instances, the defendant wishes to hold the State to its part of the bargain while not adhering to his own part of the agreement, thereby raising the specter of gamesmanship similar to that discussed in *Evans*. Just as the specific sentence and plea went "hand in hand" as material elements of the plea bargain in *Evans*, so, too, did the plea and the conditions of probation at issue here.

Defendant, in his brief, does not address *Barnett* substantively, but asks that we adhere to our position in *Lampitok* that the probationer's agreement in that case to a warrantless search condition did not constitute prospective consent.

We find *Lampitok* to be factually distinguishable from this case. First, we note the significant differences between the probation condition at issue there and the condition agreed to by defendant at bar. In *Lampitok*, the probationer was subject to a probation order which provided that she "shall submit to a search of her person, residence, or automobile at any time as directed by her Probation Officer to verify compliance with the conditions of this Probation Order." (Internal quotation marks omitted.) *Lampitok*, 207 Ill. 2d at 236. Reviewing the "shall submit" language used in that provision, we held that it did not constitute a prospective consent, as it only charged the probationer with the duty to submit to a search when directed to do so, and she retained an element of choice as to whether to comply with the condition or face possible revocation of her probation. *Id*. at 261-62.

In contrast, the language used in defendant's probation order is far more restrictive with regards to defendant's conduct, and far more restrictive with respect to its scope. Defendant is required to "obey and comply" with the "rules and regulations of intensive probation supervision," including that he "[s]ubmit to searches of [his] person, residence, papers, automobile and/or effects at any time such requests are made by the Probation Officer, and consent to the use of anything seized as evidence in court proceedings." Unlike in *Lampitok* where

we held that the search condition "affirmatively required [the] probation officer to ask [the probationer's] consent" to a search limited to verify her compliance with conditions of her probation (*id*. at 262), here, defendant has agreed to obey and comply with *any* search conducted by a probation officer, and has also *explicitly provided* "consent" to the use of anything seized during such search as evidence in court proceedings. It is clear that defendant's search condition implicates far more than only the probation revocation discussed in *Lampitok*. Accordingly, the search conditions set forth in these cases are factually distinguishable.

*Lampitok* is further distinguishable to the extent that, unlike here, defendant Lampitok was *not* the probationer subject to the search condition. Instead, Lampitok was an acquaintance who occupied a motel room with the probationer at the time probation officers searched the premises, and who was arrested as a result of the discovery of drugs and weapons. *Id.* at 235-37. Finally, we also note that *Lampitok* preceded *Barnett*, and, therefore, we did not have the benefit of its analysis at the time of that decision.

Thus, we have not had prior occasion to answer the question squarely presented in this appeal. Because *Barnett* not only addresses identical facts to those in the case at bar, but also mirrors our own precedent establishing that contract principles govern a fully negotiated guilty plea, we find *Barnett* persuasive. In addition, we believe that on these facts this approach also promotes the dual purpose of the probation system: the rehabilitation of the probationer and the protection of the public. *Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987). We therefore hold that under the specific facts in this appeal, defendant's agreement to the suspicionless search condition in article 10(c) of his probation order constituted prospective consent.[4]

Because we find that defendant waived his fourth amendment rights by freely agreeing to the suspicionless search condition set forth

---

[4]We note that this case does not present the situation where a defendant was involuntarily placed on probation, required to submit to conditions imposed by the sentencing judge, or had no option to refuse the conditions. Our decision today is limited to the specific facts presented, and we express no opinion with respect to other factual situations.

in article 10(c) of his probation order, we need not address the remainder of the State's arguments in support of its position that the search was valid.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

Appellate court judgment reversed;
circuit court judgment affirmed.