**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190019-U

Order filed November 15, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0019 Circuit No. 17-CF-155 |
| | ) | |
| MAURICE O. IRBY, | ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE O'BRIEN delivered the judgment of the court.
Justices Daugherity and Schmidt concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) The circuit court properly denied defendant's motion to suppress; and (2) defendant made a knowing and voluntary waiver of his right to counsel.

¶ 2    Defendant, Maurice O. Irby, appeals his conviction for unlawful possession of firearm ammunition by a felon. Defendant argues the Peoria County circuit court erred by (1) denying his motion to suppress evidence, and (2) accepting his waiver of counsel. We affirm.

¶ 3                                I. BACKGROUND

¶ 4 On March 14, 2017, the State charged defendant with unlawful possession of firearm ammunition by a felon (720 ILCS 5/24-1.1(a) (West 2016)). Defendant was initially represented by the public defender's office, who filed a motion to suppress evidence, arguing the officers lacked probable cause or reasonable suspicion to conduct a traffic stop and search his vehicle. By the time arguments on the motion were heard, defendant had retained private counsel.

¶ 5 During the hearing on defendant's motion to suppress evidence, Officer David Yeager of the Peoria Police Department testified that he and Officer Nathan Adams observed defendant leave a convenience store, enter a vehicle, and drive away. Adams informed Yeager that, two days earlier, defendant received a ticket for driving on a revoked license. Yeager testified that they began following defendant's vehicle, looking for probable cause to pull him over. The officers observed defendant fail to stop properly at a stop sign. Yeager conducted a traffic stop, arrested defendant for driving while license revoked, and conducted an inventory search in anticipation of the vehicle being towed due to a city ordinance. During the search, Yeager discovered a box of firearm ammunition.

¶ 6 The squad car's dash camera recorded the stop, though rain hampered the video recording's quality. The court observed that the line associated with the stop sign was not visible in the video when defendant allegedly failed to stop properly, saying "[n]o one can see the lines from that distance. That's to be sure." However, after watching the video multiple times, the court determined, "I do find that [defendant] did slightly roll that stop sign on that occasion."

¶ 7 The parties stipulated that Adams would have testified that he knew defendant's license was revoked at the time of the stop because he was aware that defendant received a ticket for driving on a revoked license two days earlier.

2

¶ 8        The circuit court denied defendant's motion to suppress evidence, finding Yeager's testimony credible. The court concluded that, between the officers' observations of defendant's failure to stop properly, Yeager's testimony, and the stipulated testimony regarding Adams's knowledge of defendant's revoked license, the officers had a reasonable suspicion to believe defendant committed a violation.

¶ 9        Defendant filed a motion to reconsider the denial of his motion to suppress evidence. On August 16, 2018, after hearing the parties' arguments, the court denied the motion. Private counsel then suggested to proceed by way of a stipulated bench trial where the parties would stipulate to the evidence. The State agreed with counsel and added that the court would determine defendant's guilt.

¶ 10       The court admonished defendant of his rights. Defendant waived his rights to a jury or bench trial, and the matter proceeded to a stipulated bench trial. The State entered the stipulated evidence into the record which largely consisted of the evidence presented during the motion to suppress hearing. The court then inquired:

> "Knowing that your Motion to Suppress and its ruling have been preserved for appeal purposes, [defendant], do you agree that, with that evidence coming in that you've objected to and been overruled, that that evidence would be sufficient to find you guilty of the charge of unlawful possession of firearm ammunition by a felon?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. Court, if that's where we're at, does find it sufficient to find [defendant] guilty of the unlawful possession of a firearm ammunition by a felon."

The court set the matter for a sentencing hearing.

¶ 11　　On September 13, 2018, defendant filed a letter that asserted he wished to withdraw his "plea" and argued private counsel provided ineffective assistance. Counsel filed a motion to withdraw. The court interpreted defendant's letter as a *Krankel* motion and conducted a preliminary *Krankel* inquiry. Before ruling on defendant's ineffective assistance claims, the court said:

> "First of all, this wasn't a plea agreement. It was a stipulated bench trial. Those can amount to pleas—which this might fall into that category—all for the purpose of preserving your right to appeal in the denial of the motion to suppress hearing that you had in this case; in other words, move forward with sentencing, get to appeal whether your motion to suppress was properly granted or not."

Then, the court asked the attorneys to refresh its recollection as to whether they had stipulated to the admission of the evidence or they stipulated that the evidence was sufficient to convict. The court thought that the parties had stipulated to the sufficiency of the evidence.

¶ 12　　Private counsel thought that the court's recollection, that defendant had stipulated to the sufficiency of the State's evidence, was correct. The State did not recall the nature of the stipulated bench trial.

¶ 13　　The court found no basis to appoint new counsel and granted private counsel's motion to withdraw. The court then asked defendant, "Can you afford to hire your own attorney? Or would you prefer the public defender to represent you on your motion to withdraw your plea?" Defendant answered, "I might have my people try to get me an attorney." The court set a new hearing date to allow defendant time to determine how he wished to proceed.

¶ 14     On October 17, 2018, the court called the instant case and case No. 18-CF-361 for a hearing. At that time, defendant appeared without counsel in the instant case, and in case No. 18-CF-361, defendant was represented by an assistant public defender. The following exchange occurred at the beginning the hearing.

"THE COURT: *** Are you ready to represent yourself, or can you hire somebody else?

THE DEFENDANT: I'm ready to [proceed] with this case.

THE COURT: You what?

THE DEFENDANT: No, I'm ready to [proceed] with this case. I want to get it over with. I don't have an attorney.

THE COURT: You do not have an attorney?

THE DEFENDANT: No. I'm not going to hire none.

THE COURT: You're going to represent yourself?

THE DEFENDANT: Yeah."

¶ 15     After admonishing defendant regarding the nature of the charges and the potential sentence range, the court sought to confirm defendant's desire to proceed as a self-represented litigant:

"THE COURT: And is it accurate that you want to represent yourself at that sentencing hearing?

THE DEFENDANT: Do I have a choice?

THE COURT: What's that?

THE DEFENDANT: Do I have a choice? I mean, I'm not hiring an attorney.

THE COURT: All right. Let's talk about that. Can you afford to hire an attorney?

THE DEFENDANT: No.

THE COURT: Mr. Asbury was your private attorney, right?

THE DEFENDANT: Yes.

THE COURT: But you have no more money to hire anybody else?

THE DEFENDANT: No.

THE COURT: Okay. Are you requesting representation at this time, or do you want to represent yourself?

THE DEFENDANT: I'll represent myself.

THE COURT: You will?

THE DEFENDANT: Yeah.

THE COURT: So you decline even asking for a public defender?

THE DEFENDANT: Is it gonna stop the sentence date? Is it going to change?

THE COURT: What's that?

THE DEFENDANT: Is the sentencing date gonna change? Are we gonna still pursue that?

THE COURT: This case is set for sentencing. You can either represent yourself or ask for a public defender to represent you and I'll have to see if that's going to work or not.

THE DEFENDANT: Represent myself.

THE COURT: Okay. Do you decline the public defender's representation?

THE DEFENDANT: Yes."

The court warned defendant of the potential pitfalls of self-representation and asked, once again, whether defendant wished to proceed as a self-represented litigant. Defendant answered, "I'm ready to get this case over." At the end of the hearing, the court asked defendant "Before you leave, [defendant], you know you've got a right to represent yourself. You also have a right to have an attorney appointed for you if you can't afford one. Do you understand that?" Defendant said "[y]es," and the court accepted defendant's waiver of counsel.

¶ 16    On November 1, 2018, the cause proceeded to a sentencing hearing. At the beginning of the hearing, the court asked if defendant had filed a "posttrial motion." Defendant said he did not file a motion. The court sentenced defendant to nine years' imprisonment and admonished defendant that to preserve his right to appeal he must first file a motion to reconsider sentence.

¶ 17    On December 10, 2018, defendant filed a motion for new trial. In the motion, defendant asserted "That on the date of August 16, 2018, the defendant entered a plea of guilty via a stipulated bench trial ***." Defendant argued that private counsel provided ineffective assistance.

¶ 18    On January 10, 2019, defendant appeared as a self-represented litigant for a hearing on his motion for new trial. The court denied the motion, and defendant appeals.

¶ 19                                    II. ANALYSIS

¶ 20    Defendant argues the circuit court erred by (1) denying his motion to suppress evidence because the officers lacked probable cause to conduct a traffic stop, and (2) accepting his waiver of counsel where the record showed that the court failed to provide a complete Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) admonishment and confusion existed regarding the nature of

the proceedings. We find the circuit court properly denied defendant's motion to suppress evidence, and he made a knowing and voluntary waiver of his right to counsel.

¶ 21                        A. Motion to Suppress Evidence

¶ 22        Defendant argues the circuit court erred in denying his motion to suppress evidence because the traffic stop's purported bases were pretextual and there was no probable cause supporting the stop. We review a circuit court's ruling on a motion to suppress evidence under the two-part test laid out by the Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 699 (1996). *People v. Absher*, 242 Ill. 2d 77, 82 (2011). "The circuit court's factual findings are upheld unless they are against the manifest weight of the evidence." *Id.* We apply *de novo* review to the ultimate legal question of whether suppression is warranted. *Id.*

¶ 23        The fourth amendment's reasonableness requirement extends to traffic stops, which constitute the seizure of persons. *People v. Close*, 238 Ill. 2d 497, 504 (2010). We analyze traffic stops under *Terry v. Ohio*, 392 U.S. 1 (1968). *People v. Litwin*, 2015 IL App (3d) 140429, ¶ 34. " 'Under *Terry*, the reasonableness of police action taken during an investigative detention involves a dual inquiry: (1) whether the officer's action was justified at its inception; and (2) whether the officer's action was reasonably related in scope to the circumstances which justified the interference in the first place.' " *Id.* (quoting *People v. Baldwin*, 388 Ill. App. 3d 1028, 1031-32 (2009)). Defendant only challenges the stop's initial justification, not whether the officers' actions were reasonably related in scope to the circumstances allegedly justifying the stop.

¶ 24        An officer needs only reasonable suspicion to conduct a traffic stop. *People v. Hackett*, 2012 IL 111781, ¶ 20. An officer may conduct "a brief, investigatory stop" when he reasonably believes that an individual has committed a crime. *Close*, 238 Ill. 2d at 505. " '[T]he police officer

8

must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *Id.* (quoting *Terry*, 392 U.S. at 21). While the officer's suspicion must be more than "an inarticulate hunch," it need not rise to the level necessary to satisfy probable cause. *Id.* In determining whether an officer's conduct violated the fourth amendment, we ask whether " 'the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' " *Id.* (quoting *Terry*, 392 U.S. at 21-22, quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

¶ 25    Defendant argues that neither the officers' stated knowledge that defendant's license was revoked, nor the evidence presented regarding the stop sign violation provided probable cause to conduct a traffic stop. First, defendant points to Yeager's testimony that, after Adams told him of the status of defendant's license, the officers followed defendant in search of probable cause as evidence that the knowledge Adams shared was insufficient to conduct a traffic stop. During the motion hearing, the parties stipulated that Adams would have testified he was aware that defendant received a ticket for driving while license revoked two days prior, and therefore he knew defendant's license was revoked. Yeager testified that Adams conveyed that information to him, which led them to follow defendant's vehicle. See *People v. Corral*, 147 Ill. App. 3d 668, 673 (1986) ("[A] police officer may rely upon information he or she obtains from a fellow officer engaged in the same investigation to establish probable cause."). Driving on a revoked license is a violation of section 6-303(a) of the Illinois Vehicle Code (Code). 625 ILCS 5/6-303(a) (West 2016). The testimony provided points to specific, articulable facts that, when considered in conjunction with the rational inferences that can be taken from those facts, establish reasonable suspicion to execute a traffic stop of defendant's vehicle. See *Terry*, 392 U.S. at 21.

9

¶ 26      Next, defendant argues that the court erroneously found that he committed a stop sign infraction. Defendant contends that because the court acknowledged the stop line was not visible, the court could not accurately determine whether defendant failed to stop properly in violation of section 11-1204(b) of the Code. See 625 ILCS 5/11-1204(b) (West 2016). After viewing the video recording of the stop several times, the court asserted that "[n]o one can see the lines from that distance. That's to be sure." However, relying on its observations of the video recording and Yeager's testimony, the court found that defendant "did slightly roll that stop sign." From our review, this finding is not against the manifest weight of the evidence, as the opposite conclusion is not clearly evident nor is the finding unreasonable, arbitrary, or not based on the evidence presented. See *People v. Relwani*, 2019 IL 123385, ¶ 18. Thus, Yeager had reasonable suspicion to conduct a traffic stop, as he observed defendant violate section 11-1204(b) of the Code. See *Terry*, 392 U.S. at 21. The court did not err by denying defendant's motion to suppress evidence.

¶ 27                          B. Defendant's Waiver of Counsel

¶ 28      Defendant argues that the circuit court failed to substantially comply with Rule 401(a), and confusion existed regarding the nature of the proceedings, such that the court did not obtain a valid waiver of counsel from him.

¶ 29      The United States Constitution and the Illinois Constitution guarantee the right to counsel during all critical stages of a criminal prosecution. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8; *People v. Burton*, 184 Ill. 2d 1, 22 (1998). A defendant also has the constitutional right to represent himself. *Faretta v. California*, 422 U.S. 806, 835 (1975); *Burton*, 184 Ill. 2d at 21. To waive the right to counsel and proceed as a self-represented litigant, "a defendant must knowingly and intelligently relinquish his right to counsel," and that waiver "must be clear and unequivocal, not ambiguous." *People v. Baez*, 241 Ill. 2d 44, 115-16 (2011). We must " 'indulge in every

10

reasonable presumption against waiver' of the right to counsel." *Burton*, 184 Ill. 2d at 23 (quoting *Brewer v. Williams*, 430 U.S. 387, 404 (1977)).

¶ 30    The Rule 401(a) admonishments ensure that a defendant makes a knowing and voluntary waiver of his right to counsel. *People v. Haynes*, 174 Ill. 2d 204, 241 (1996). Under Rule 401(a), a circuit court shall not accept a defendant's waiver of counsel without informing him of, and determining that he understands, the following: "(1) the nature of the charge; (2) the minimum and maximum sentence prescribed by law ***; and (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984). "[S]ubstantial compliance with Rule 401(a) is required for an effective waiver of counsel." *People v. Campbell*, 224 Ill. 2d 80, 84 (2006). "Substantial compliance occurs when any failure to fully provide admonishments does not prejudice defendant ***." *People v. Pike*, 2016 IL App (1st) 122626, ¶ 112. We review *de novo* whether the circuit court properly admonished defendant pursuant to Rule 401(a). *Id.*

¶ 31    Here, the record establishes that the circuit court substantially complied with the Rule 401(a) admonishment requirement and defendant made a knowing and voluntary waiver of his right to counsel. On October 17, 2018, the court called the case for hearing following private counsel's withdrawal and defendant's suggestion that he might retain private counsel. Defendant appeared before the circuit court without an attorney and indicated that he wanted to represent himself. Defendant indicated on the record that he understood the charge and sentencing range. Before allowing defendant to represent himself, the court admonished defendant of the charge and sentencing range. Although the court omitted the third admonishment that defendant had the right to counsel, and if indigent, to appointed counsel, this omission did not invalidate defendant's waiver. Ill. S. Ct. R. 401(a)(3) (eff. July 1, 1984). Notably, the October 17, 2018, hearing addressed

11

both case Nos. 17-CF-155 and 18-CF-361. At the beginning of the hearing, an assistant public defender entered her appearance on behalf of defendant in case No. 18-CF-361. While the public defender's appearance was limited to that case, it nonetheless indicated to defendant that he had the right to appointed counsel. Additionally, defendant was previously represented by appointed counsel and privately retained counsel during several prior hearings in this case. Therefore, the court's partial Rule 401(a) admonition did not invalidate defendant's waiver of counsel.

¶ 32　　　　Regardless of the specificity of the court's admonishments, it is clear from defendant's statements and actions that he had no desire or intent to request appointed counsel and made a knowing and voluntary waiver of his right to counsel. Defendant clearly and repeatedly indicated that he wanted to represent himself. Then, at the conclusion of the October 17, 2018, hearing, the court asked "Before you leave, [defendant], you know you've got a right to represent yourself. You also have a right to have an attorney appointed for you if you can't afford one. Do you understand that?" In response, defendant confirmed that he understood that he had the right to appointed counsel, and he persisted in his desire to represent himself and appeared as a self-represented litigant at the next hearing. This final clarification by the court establishes that defendant understood his right to appointed counsel and knowingly gave up that right.

¶ 33　　　　In seeking a reversal, defendant suggests that the record is unclear as to the nature of the stipulated bench trial, and this uncertainty impacted his ability to make a knowing waiver of his right to counsel. However, the potential issue of whether defendant stipulated to the admission of the evidence or sufficiency of the evidence does not directly implicate his understanding of his right to counsel or appointed counsel. Instead, this concern goes to the necessity of Illinois Supreme Court Rule 402 admonishments and the postjudgment procedures needed to preserve defendant's right to appeal. Defendant does not raise a Rule 402 admonishment issue.

12

¶ 34                                    III. CONCLUSION

¶ 35          The judgment of the circuit court of Peoria County is affirmed.

¶ 36          Affirmed.