**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210176-U

Order filed August 15, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Tazewell County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0176 Circuit No. 18-CF-665 |
| KHALEEL ZARIF, | ) ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices McDade and Brennan concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The circuit court properly denied the defendant's motions to suppress evidence.

¶ 2     The defendant, Khaleel Zarif, appeals his conviction for unlawful possession of a stolen motor vehicle, arguing that the Tazewell County circuit court erred in denying two motions to suppress evidence: a motion to suppress evidence seized as a result of the defendant's arrest and a motion to suppress evidence obtained by searching the defendant's cell phone.

¶ 3                                          I. BACKGROUND

¶ 4    On October 4, 2018, the defendant was charged by superseding indictment with unlawful possession of a stolen vehicle (625 ILCS 5/4-103(a)(1) (West 2018)). The defendant subsequently filed two motions to suppress evidence. The first motion claimed that the defendant was unreasonably searched and seized in violation of his rights under the fourth amendment. The second motion argued that the complaint for the search warrant failed to provide probable cause for the issuance of the warrant and that the warrant failed to specify with particularity the items to be seized.

¶ 5    At the hearings on the two motions to suppress, the following evidence was presented: On September 18, 2018, at 3:55 a.m., Sergeant Eric Goeken responded to a single vehicle accident on Interstate 74. Upon arrival, Goeken noted that the vehicle had sustained extensive damage, and both air bags had deployed. There was no one in the vehicle when Goeken arrived, but he noted blood on the air bags, blood droplets on the center console, a bloody fingerprint on the inside of the passenger's side window, and blood on the exterior of the passenger's side. He observed a trail of blood droplets leading into the nearest lane of traffic on Interstate 74.

¶ 6    Goeken noted that the seat belt was buckled tightly against the driver's seat, suggesting to him that the driver had not been wearing it at the time of the crash. He also observed that the windshield was cracked in a spider web pattern. Based on the way the seat belt was buckled, the blood in and around the vehicle, and the damage to the windshield, Goeken surmised that the driver had hit their head on the windshield after the crash. Goeken was advised by dispatch that the vehicle had been stolen out of Peoria, and a search commenced to locate the driver of the vehicle.

¶ 7    At approximately 5 a.m., Goeken left the scene of the accident. Goeken exited the highway and had traveled approximately one mile when he saw an individual walking down the road. As Goeken approached the individual, he turned on his spotlight, and the person either fell or dropped

intentionally into the ditch. Goeken pulled his vehicle over and used his spotlight to shine into the ditch, at which point he observed the defendant laying in the ditch with his face covered in blood.

¶ 8        The defendant got up to run. Goeken yelled for the defendant to stop and identified himself as a police officer. The defendant disregarded Goeken's commands and fled. The area was not a residential neighborhood, and the defendant fled toward the edge of a nearby business. Goeken pursued him and continued to tell the defendant to stop. Eventually, the defendant fled to a wooded area and hid. When Goeken determined that the defendant had stopped running, he called for backup. The defendant was located by another officer, handcuffed, searched, and placed into Goeken's squad car for "resisting arrest."

¶ 9        Noting the defendant's injuries, Goeken called for an ambulance and drove the defendant from the wooded area to the nearest parking lot to the waiting ambulance. During the drive to the ambulance, the defendant, unprompted, told Goeken that a female friend had "set him up" and that he was "jumped" by a male who hit him in the head with a tire iron. The defendant stated that evidence of these interactions would be found on his cell phone and implored Goeken to look at his cell phone.

¶ 10        Goeken, noting the absence of a cell phone on the defendant when he was searched, asked officers to check the ditch where he had first seen the defendant. Officers recovered a cell phone, flashlight, and a tire iron from the ditch.

¶ 11        Later that day, Detective Sergeant Ryan Tarby applied for a search warrant to investigate the contents of the cell phone located in the ditch. In support of his request, Tarby cited the discovery of a vehicle that had been stolen and crashed, the observation of blood in and around the vehicle, the location and apprehension of the defendant near the scene of the accident, the

3

defendant's flight from Goeken, and the fact that the defendant was on parole for possession of a stolen vehicle. A search warrant was issued describing the items to be seized as:

> "[A]ny and all digital files contained within the internal and external memory, hard drives, including but limited to contacts, emails, text messages (short messaging service), multi-media messaging services, photographs, calendar, any voice recorded messages, [global positioning system] GPS logs, phone call history logs, or other items which tend to evidence possession or control of the premises and related paraphernalia which have been used in the commission of, or which constitutes evidence of the offense of Possession of Stolen Vehicle in violation of 625 Illinois Vehicle Code 5/4-103(a)(1), 2018, as amended."

After the hearings the circuit court denied the two motions to suppress. Following their denial, the defendant filed motions to reconsider, which were also denied.

¶ 12    The case proceeded to a stipulated bench trial. At trial, the State reiterated Goeken's testimony and presented the evidence gathered from the defendant's cell phone. An examination of the cell phone's data revealed that it belonged to the defendant, and an examination of the GPS data revealed the defendant's location and travel pattern prior to his arrest. Five days before the accident (September 13, 2018), the defendant had traveled on foot to the Unity Point Health Proctor hospital parking lot in Peoria. The GPS data showed that, later that day, the defendant drove a vehicle out of the parking lot.[1] On September 18, 2018, the date of the accident, the defendant traveled south on Interstate 55 at approximately 2 a.m., stopped at a Shell gas station in Darien, continued south on Interstate 55, then drove west on Interstate 74 toward Morton. His

---

[1]The record is unclear about the precise timing of the defendant's actions on September 13, 2018, but the owner of the vehicle reported the vehicle's theft at 8:49 a.m. on September 14, 2018.

driving path ended at the location of the accident, whereafter the defendant began walking and continued to the location where Goeken encountered the defendant.

¶ 13    The State presented the following additional evidence: (1) the owner of the vehicle reported it stolen from Unity Point Health Proctor hospital in Peoria on September 14, 2018, following her overnight shift; (2) surveillance video from the Shell gas station in Darien showed the stolen vehicle entering the parking lot on September 18, 2018; (3) the surveillance video additionally showed an individual matching the defendant's description entering the gas station and making a purchase; (4) the fingerprints obtained from the vehicle matched the defendant's; and (5) the DNA obtained from the vehicle matched the defendant's.

¶ 14    The defendant agreed to the facts presented by the State, clarifying that only the blood from the passenger's side of the vehicle was tested. The State agreed the blood collected from the driver's side had not been tested. The court found that the State had proven the defendant guilty of unlawfully possessing a stolen motor vehicle. The defendant filed a motion for a new trial, which was denied. The defendant was sentenced to 13 years and 3 months' imprisonment. He filed a timely motion to reconsider his sentence, which was also denied. The defendant appealed.

¶ 15                                   II. ANALYSIS

¶ 16    On appeal, the defendant argues that the circuit court erred in denying two motions to suppress evidence. Specifically, the defendant contends that the State lacked probable cause to effect his arrest, and that the search warrant issued to search the defendant's cell phone was impermissibly broad.

¶ 17    We review a circuit court's ruling on a motion to suppress evidence under the two-part test laid out by the United States Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 699 (1996), and adopted by our supreme court in *In re G.O.*, 191 Ill. 2d 37, 49 (2000). "The circuit court's

5

factual findings are upheld unless they are against the manifest weight of the evidence." *People v. Absher*, 242 Ill. 2d 77, 82 (2011). We apply *de novo* review to the ultimate legal question of whether suppression is warranted. *Id.*

¶ 18　　　　The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Reasonableness under the fourth amendment generally requires a warrant supported by probable cause. *Katz v. United States*, 389 U.S. 347, 357 (1967). We consider each of the defendant's contentions in turn.

¶ 19　　　　　　　　　　　　A. Improper Seizure of the Defendant

¶ 20　　　　The defendant argues that the court erred in denying his first motion to suppress evidence because the police lacked probable cause to arrest the defendant. The defendant acknowledges on appeal that he was not seized for fourth amendment purposes at the time of his initial encounter with Goeken but asserts that officers lacked probable cause to arrest him following his flight. In support of his position, the defendant claims that the only facts available to police at the time of his arrest was the blood on the defendant's face and the fact that the defendant fled. The defendant acknowledges that his unprovoked flight may have provided police with reasonable suspicion that he was engaged in criminal activity but insists that the facts known to police at the time did not amount to probable cause to arrest the defendant.

¶ 21　　　　An arrest executed without a warrant is valid only if the arrest is supported by probable cause. *People v. Montgomery*, 112 Ill. 2d 517, 525 (1986). Probable cause to arrest exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime. U.S. Const., amend IV. The existence of probable cause to arrest is an objective determination that must be made on a case-by-case basis

6

and depends on the totality of the circumstances at the time of the arrest. *Montgomery*, 112 Ill. 2d at 525.

¶ 22 Probable cause exists when police "have knowledge of facts which would lead a reasonable man to believe that a crime has occurred and that it has been committed by the defendant." *People v. Eddmonds*, 101 Ill. 2d 44, 60 (1984). However, the standard for assessing probable cause is the "probability of criminal activity, and not proof beyond a reasonable doubt." *People v. Exline*, 98 Ill. 2d 150, 154 (1983). Whether probable cause exists in a particular case does not depend upon the application of technical legal rules, but upon the totality of the circumstances and facts known to the officer at the time the arrest was made. *People v. Wolff*, 182 Ill. App. 3d 583, 586 (1989). Further, there is less difficulty in establishing probable cause when it is known that a crime has been committed. *People v. Hopkins*, 235 Ill. 2d 453, 476 (2009). "The police need less of a factual basis to establish probable cause when they are acting in response to a recent serious crime than when it is not known if a crime has been committed." *Id.*

¶ 23 Here, the defendant argues that police had, at most, reasonable suspicion justifying a brief detention of the type described in *Terry v. Ohio*, 392 U.S. 1 (1968), at the time of his arrest. The State contends that since the defendant was merely transported to a waiting ambulance, his detention was justified pursuant to *Terry*. Alternatively, the State suggests that the defendant's arrest was supported by probable cause.

¶ 24 The defendant was handcuffed, placed in a squad car, and was not free to leave at the time he was apprehended. In general, our supreme court has held that an arrest occurs when a person's freedom of movement has been restrained by means of physical force or a show of authority. *People v. Melock*, 149 Ill. 2d 423, 436-37 (1992). We find these circumstances more analogous to an arrest than a *Terry* detention. See, *e.g.*, *People v. Johnson*, 408 Ill. App. 3d 107, 116-18 (2010)

7

(the defendant was deemed to be arrested because he was placed in handcuffs and told he was under arrest after fleeing a traffic stop). Consequently, we must determine whether the officers had sufficient probable cause to arrest the defendant.

¶ 25        At the time of the defendant's arrest, Goeken was aware that a vehicle had been stolen and recently crashed in the area, and that the perpetrator of the crime was likely fleeing on foot and suffering from a head wound. Goeken located defendant alone and on foot in a nonresidential area approximately one mile from the accident at 5 a.m. Goeken then observed the defendant had suffered a head wound and was bleeding.

¶ 26        Moreover, the defendant fled in response to Goeken's commands to stop. We are cognizant that citizens have a right to ignore, or fail to heed, a baseless police order or show of authority. *People v. Thomas*, 198 Ill. 2d. 103, 114 (2001). However, the defendant's flight in this case must be viewed in conjunction with the other information available to the officers at the time of his arrest. Absent an innocent explanation, evidence of flight can be introduced to indicate the defendant's consciousness of guilt. *People v. Harris*, 52 Ill. 2d 558, 561 (1972).

¶ 27        Police were aware that a crime had been committed and were specifically looking for an injured suspect who had fled the scene of the accident. The defendant was in the immediate area of that accident and matched the information known at the time about the perpetrator. Given the totality of the circumstances, we find that the police had probable cause to arrest the defendant for possession of a stolen motor vehicle. Accordingly, the defendant's motion to suppress evidence seized as a result of his arrest was correctly denied.

¶ 28                                B. Impermissibly Broad Search Warrant

8

¶ 29    The defendant next challenges the circuit court's denial of his second motion to suppress evidence obtained from defendant's cell phone. Specifically, the defendant argues that the search warrant used to search his cell phone was impermissibly broad.

¶ 30    Although there are many exceptions, the fourth amendment to the United States Constitution and the Illinois Constitution generally require the State to secure a search warrant prior to conducting a search. U.S. Const., amend. IV; Ill. Const. 1970, art. I § 6. "[A] detached judicial officer must resolve the question of whether probable cause exists to justify issuing a warrant." *People v. Tisler*, 103 Ill. 2d 226, 236 (1984). Probable cause in this context means that the facts available to the individual are "sufficient to warrant a person of reasonable caution to believe that the law was violated and evidence of it is on the premises to be searched." *People v. Griffin*, 178 Ill. 2d 65, 77 (1997). The task of the issuing magistrate is to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *People v. McCarty*, 223 Ill. 2d 109, 153 (2006).

¶ 31    The degree of particularity required by a search warrant is determined on a case-by-case basis and depends on the nature of the items to be seized. *People v. Batac*, 259 Ill. App. 3d 415, 420 (1994). A minute and detailed description is not required, but the property must be sufficiently described so that the officer conducting the search will not seize the wrong property or go on a fishing expedition. *Id.* On review, we will not overturn the circuit court's decision regarding a motion to suppress evidence obtained as a result of a search warrant unless it is manifestly erroneous. *People v. Reyes*, 2020 IL App (2d) 170379, ¶ 49.

¶ 32    The defendant argues that the facts alleged in the complaint support only a search for the defendant's GPS data and not a search of the defendant's entire cell phone. However, we reject at

9

the outset the defendant's contention that police sought permission to search the "entirety" of the defendant's cell phone. The plain language of the warrant issued in this case limits the scope of the search to specific file types and to evidence related to the offense with which the defendant was charged. The fourth amendment's particularity requirement with respect to cell phones may be satisfied by describing the "nature of the items to be searched for *** without precise specification of file names or locations." *Id.* ¶ 72.

¶ 33        Because the cell phone was not seized from the defendant's person, police were required to seek evidence of the phone's provenance and how it came to be in the ditch near Morton. Such evidence could reasonably be located within the phone's contacts, emails, text messages, multi-media messaging services, photographs, calendar, voice recorded messages, GPS logs, or call history logs. The warrant was explicitly limited to those items. Additionally, the warrant affidavit made clear that the alleged crime under investigation was the theft of a vehicle five days prior and the defendant's potential possession of that stolen vehicle. The warrant's scope was related to recovering evidence of either ownership of the cell phone itself, ownership of the other items located in the ditch ("related paraphernalia"), or the offense of possessing a stolen motor vehicle.

¶ 34        The items described in the search warrant sought by police in this case were, therefore, particular to the crime under investigation. We find that the search warrant issued in this case met the fourth amendment's particularity requirements and hold that the warrant's scope was not overly broad.

¶ 35        Further, even if the warrant was impermissibly overbroad, any error was harmless. There is no indication that the defendant's conviction was based on any items discovered as a result of the allegedly overbroad search. The only information used by the State from the search was the defendant's GPS data, the search for which the defendant concedes was supported by probable

10

cause. The partial invalidity of a warrant does not taint the entire warrant, and the invalid portion can be extracted from the warrant and the tainted items suppressed. *People v. McCoy*, 135 Ill. App. 3d 1059, 1067 (1985). Thus, even striking any allegedly invalid portions of the warrant, the GPS data used to convict the defendant would remain a valid subject of the warrant's scope. Accordingly, we find that the circuit court did not err in denying the defendant's second motion to suppress evidence.

¶ 36                                              III. CONCLUSION

¶ 37          The judgment of the circuit court of Tazewell County is affirmed.

¶ 38          Affirmed.