2024 IL App (2d) 220328
No. 2-22-0328
Opinion filed July 1, 2024

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 21-MR-2028 |
| CASSIDY J. GREEN, | ) ) | Honorable John G. Dalton, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justice Schostok concurred in the judgment and opinion.
Justice Hutchinson dissented, with opinion.

**OPINION**

¶ 1     The State appeals from the trial court's order granting the petition of defendant, Cassidy J. Green, for the issuance of a certificate of innocence (COI). We affirm.

¶ 2                           I. BACKGROUND

¶ 3     On March 30, 2005, the State charged defendant with six offenses: three counts of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A); (a)(1), (a)(3)(C); (a)(1), (a)(3)(D) (West 2004)) and one count each of mob action (*id.* § 25-1(a)(1)), resisting a peace officer (*id.* § 31-1(a)), and unlawful possession of cannabis (720 ILCS 550/4(b) (West 2004)). Pursuant to a fully negotiated plea agreement, defendant agreed to plead guilty to

one count of AUUW (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2004)); in return, the State agreed to a two-year sentence and the dismissal *nolle prosequi* of all other counts charged in the indictment. The parties stipulated to the following factual basis in support of defendant's guilty plea:

> "If this matter were to proceed to trial, the State would present witnesses who would testify [that] on February 26 of 2005, at approximately 4:30 p.m., this [d]efendant was at 14 North River Road in Aurora, part of Kane County. Actually, he was in North Aurora.
>
> At that time a fight had broken out. This [d]efendant was the rear passenger in a vehicle, in the rear seat. This [d]efendant stuck a pistol out the window. When the police arrived, the [d]efendant ran.
>
> Later, a search of the car revealed a .22 caliber handgun that was loaded with nine rounds of ammunition in the vehicle.
>
> The [d]efendant admitted that he had in fact possessed the weapon in a loaded condition."

The court determined that the guilty plea was made knowingly and voluntarily, and it then accepted the agreement and imposed the agreed upon two-year sentence. Pursuant to the agreement, the State nol-prossed the remaining counts.

¶ 4    Sixteen years later, in February 2021, defendant petitioned to vacate his conviction of AUUW because our supreme court had held that section 24-1.6(a)(1), (a)(3)(A) of the Criminal Code of 1961, the provision to which defendant pleaded guilty, violated the United States Constitution and was void *ab initio*. See *People v. Aguilar*, 2013 IL 112116, ¶ 22. The State agreed that defendant's conviction had to be vacated. The court granted the petition, vacating defendant's conviction.

¶ 5    A few months later, in June 2021, defendant petitioned *pro se* for a COI under section 2-702 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-702 (West 2020)). Defendant refiled his petition in September 2021 and, again, in December 2021. Defendant alleged that he satisfied the four requirements in section 2-702(g)(1) through (g)(4) (*id*. §2-702(g)(1)-(4)) for obtaining a COI because:

"(1) he was convicted of AUUW and served 180 days in [the Illinois Department of Corrections] and [one] year [mandatory supervised release][;] (2) the [AUUW] statute that he was convicted under was later held unconstitutional pursuant to *Aguilar*; (3) his acts charged in the indictment of which he was convicted and for which he was incarcerated did not constitute a felony or misdemeanor against the [S]tate because the charge was based on a statute later held unconstitutional; and (4) he did not intentionally cause or bring about his conviction because the statute that criminalized [his] actions is void *ab initio*, and therefore, his actions for which he was charged, convicted, sentenced and incarcerated were not criminal at the time."

¶ 6    The State petitioned to intervene and attached to its petition a motion to dismiss under section 2-619.1 of the Civil Code (*id*. § 2-619.1). The trial court granted the State's petition to intervene. In its motion to dismiss, the State argued that defendant failed to (1) attach necessary documents to his petition, (2) serve the Illinois Attorney General, (3) notarize the petition, and (4) establish that he was innocent of the five counts in the indictment that were nol-prossed. Citing *People v. Smith*, 2021 IL App (1st) 200984, the State argued that defendant needed to prove by a preponderance of the evidence that he was innocent of all six offenses charged in the indictment, not just the offense he was convicted of and incarcerated for.

¶ 7 Defendant filed a motion in opposition to the State's motion to dismiss, arguing that the indictment was vacated in its entirety when defendant agreed to plead guilty to AUUW and the State nol-prossed the remaining five counts charged in the indictment. Defendant also contended that, because the State had previously agreed that his AUUW conviction was void *ab initio*, it could not now challenge defendant's petition for a COI.

¶ 8 The trial court "granted in part and denied in part" the State's motion to dismiss. The court granted the motion to dismiss to the extent that it directed defendant to serve the Illinois Attorney General—whom the court deemed a necessary party—within 30 days. The court denied the motion to dismiss to the extent that it found that *Smith* supported defendant's position that he did not need to prove by a preponderance of the evidence that he was innocent of the five counts that the State nol-prossed. The court ordered the State to answer the petition within 45 days.

¶ 9 Meanwhile, defendant served the Illinois Attorney General, who chose not to intervene. Defendant was also granted leave to file an amended petition for a COI. He attached various supporting documents to the petition. In requesting a COI, he reiterated the arguments from his original petition that he satisfied the four requirements in section 2-702(g)(1) through (g)(4) for obtaining a COI.

¶ 10 In its answer, the State partly challenged defendant's claim that he met the requirements of section 2-702(g). The State admitted that defendant was convicted of AUUW and sentenced to two years' imprisonment and 12 months' mandatory supervised release. The State also admitted that our supreme court in *Aguilar* held unconstitutional the provision of the AUUW statute under which defendant was convicted. See 720 ILCS 5/2-702(g)(2)(B) (West 2020). However, the State denied that defendant could meet the remaining two requirements of section 2-702(g). First, the State reiterated its argument from its motion to dismiss that defendant had to establish that he was

innocent of all offenses charged in the indictment (see *id.* § 2-702(g)(3)). Since the constitutionality of the statutes underlying the five nol-prossed charges was not in dispute, the State claimed that defendant had to otherwise show, by a preponderance of the evidence, that he was innocent of those charges. Second, as to the final requirement—that defendant establish that he did not voluntarily cause or bring about his conviction (see *id.* § 2-702(g)(4))—the State simply denied that defendant could satisfy this burden of proof.

¶ 11    The court granted the petition for a COI, finding as follows:

"[(1)] [defendant] pled guilty and was sentenced to [*sic*] a statute later deemed unconstitutional by the Illinois Supreme Court, [(2)] the statute of limitations has run[,] thus preventing the State from re-filing any charges dismissed as part of that plea agreement, [(3)] following the cases cited by the State in its motion to dismiss, [defendant] does not have to prove he was actually innocent of the charges the State dismissed, [and (4)] [defendant] has otherwise met his burden[,] and his petition for certificate of innocence is granted."

¶ 12    The State moved the trial court to reconsider, arguing that, pursuant to *People v. Warner*, 2022 IL App (1st) 210260-U,[1] issued five days before the court's judgment, a defendant seeking a COI had to prove by a preponderance of the evidence that he was innocent of *all* offenses charged in the indictment. Defendant retained counsel and filed a memorandum opposing the State's motion to reconsider. In the memorandum, defendant argued that *Warner* was an outlier that should not be followed, as it *inserted* into section 2-702(g)(3) a requirement for which the

---

[1]The Illinois Supreme Court Rule 23 (eff. Jan. 1, 2021) order in *Warner* was withdrawn, and an opinion (*People v. Warner*, 2022 IL App (1st) 210260) was filed, on July 21, 2022.

legislature did not provide. Specifically, defendant argued that the court in *Warner* inserted into section 2-702(g)(3) the term "all" so that, to obtain a COI, a petitioner needed to establish by a preponderance of the evidence that he "is innocent of [all] the offenses charged in the indictment." 735 ILCS 5/2-702(g)(3) (West 2020). Defendant claimed that *People v. Palmer*, 2021 IL 125621, *People v. McClinton*, 2018 IL App (3d) 160648, and *Smith* conflicted with *Warner* and should be followed instead. Defendant contended that awarding him a COI was proper because he established by a preponderance of the evidence that he was innocent of the AUUW charge he was convicted of and incarcerated for. In response, the State urged the trial court to follow *Warner* because its facts were identical to this case, while the facts of *McClinton*, *Palmer*, and *Smith* were not.

¶ 13    The trial court denied the State's motion to reconsider. The court found a split of authority among the appellate courts concerning whether a petitioner needed to establish his innocence of all offenses charged in the indictment. The court determined that *Palmer*, *McClinton*, and the special concurrence in *Warner* correctly interpreted section 2-702. Applying those cases, the court determined that defendant did not need to establish by a preponderance of the evidence his innocence as to the offenses charged in the indictment that were later dismissed. This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15    The State contends that the trial court erred in granting a COI to defendant. Specifically, the State continues to argue that the trial court should have followed the decision in *Warner*, arguing that the decision was "well-reasoned in its analysis of the plain language of the statute and directly on point" with this case such that "its holding should have controlled the petitioner's pleadings requirement and burden of proof." According to the State, the plain language of section

2-702 "requires a petitioner to establish his innocence as to all of the charges charged in the indictment."

¶ 16    " 'Generally, granting a [COI] is within the sound discretion of the [trial] court.' " *People v. Brown*, 2022 IL App (4th) 220171, ¶ 11 (quoting *People v. Amor*, 2020 IL App (2d) 190475, ¶ 11). "However, *de novo* review is appropriate where the issue involves statutory interpretation." *Id.* Here, the parties' arguments concern the interpretation of the statutory provisions for the issuance of a COI. Accordingly, our review is *de novo*.

¶ 17    In interpreting these provisions governing the issuance of COIs, we are guided by the well-settled rules of statutory construction. "The fundamental goal of statutory construction is to ascertain and give effect to the legislature's intent, [which is] best indicated by the plain and ordinary meaning of the statutory language." *Palmer*, 2021 IL 125621, ¶ 53. We cannot depart from the plain language and ordinary meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *People v. Woodard*, 175 Ill. 2d 435, 443 (1997). However, where the statutory language is ambiguous, we may consider external sources in order to discern the intent of the legislature. *People v. Bradford*, 2016 IL 118674, ¶ 15. "A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses ***." *Advincula v. United Blood Services*, 176 Ill. 2d 1, 18 (1996). Further, in interpreting these provisions, we presume "that the legislature did not intend absurd, inconvenient, or unjust results." *Palmer*, 2021 IL 125621, ¶ 53.

¶ 18    With these rules of statutory construction in mind, we now examine section 2-702. The formal title of section 2-702 of the Civil Code is "Petition for a certificate of innocence that the petitioner was innocent of all offenses *for which he or she was incarcerated*." (Emphasis added.) 735 ILCS 5/2-702 (West 2020). In enacting section 2-702 of the Civil Code, the legislature

declared its findings and intent that "innocent persons who have been wrongly convicted of crimes in Illinois and subsequently imprisoned have been frustrated in seeking legal redress due to a variety of substantive and technical obstacles in the law and that such persons *should have an available avenue to obtain a finding of innocence* so that they may obtain relief through a petition in the Court of Claims." (Emphasis added.) *Id*. § 2-702(a).

¶ 19    Subsection (g), which lays out the elements needed to obtain a COI, requires a petitioner to prove by a preponderance of the evidence that:

"(1) the petitioner was convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;

(2)(A) the judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either the petitioner was found not guilty at the new trial or the petitioner was not retried and the indictment or information dismissed; or (B) the statute, or application thereof, on which the indictment or information was based violated the Constitution of the United States or the State of Illinois;

(3) the petitioner is innocent of the offenses charged in the indictment or information or his or her acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State; and

(4) the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction." *Id*. § 2-702(g).

Assuming that a petitioner can meet his burden, subsection (h) provides that the court "shall enter a certificate of innocence finding that the petitioner was innocent of all offenses for which he or she was incarcerated." *Id*. § 2-702(h).

¶ 20　Our supreme court has consistently applied a broad reading to section 2-702 to further this legislative intent. In *Palmer*, the court found that "the legislature plainly stated its intent to *ameliorate, not impose, technical and substantive obstacles* to petitioners seeking relief from a wrongful conviction." (Emphasis added.) 2021 IL 125621, ¶ 68. In *People v. Washington*, 2023 IL 127952, the supreme court cited approvingly the decision in *People v. Glenn*, 2018 IL App (1st) 161331, where the appellate court "employed an expansive reading of the statute" and "interpreted the term imprisonment to include petitioners who were sentenced to probation," noting that the *Glenn* court concluded that "its broad interpretation preserved the intent of the statute 'to seek relief from the State for wrongful imprisonment.' " *Washington*, 2023 IL 127952, ¶ 32 (quoting *Glenn*, 2018 IL App (1st) 161331, ¶ 20). The *Washington* court found the appellate court's decision in the case before it (finding that innocent petitioners who pleaded guilty, whether or not they voluntarily caused or brought about their convictions, were precluded from obtaining a certificate of innocence) imposed "technical and substantive obstacles" and was a restrictive reading of the statute that "does not align with the statutory language or legislative intent." *Id.* ¶ 34.

¶ 21　The parties here agree that defendant satisfied section 2-702(g)(1) and (g)(2). However, as to section 2-702(g)(3), the State argues that "[defendant] was required to establish that he was actually innocent of *all* of the charges in the indictment." (Emphasis added.) Thus, according to the State, defendant had to prove that he was innocent of all six offenses charged in the indictment, not just the AUUW count he was convicted of and incarcerated for. Defendant responds that, because "the word 'all' does not appear in subsection [2-]702(g)(3)," adding the word "all"

changes the meaning of section 2-702(g)(3), which runs afoul of a reviewing court's authority. We agree with defendant.

¶ 22   The State and the dissent rely on *Warner* to support their arguments.[2] In *Warner*, the petitioner was charged with multiple firearms offenses, including six counts of AUUW. *Warner*, 2022 IL App (1st) 210260, ¶ 2. The petitioner pleaded guilty to one count of AUUW, and in return, the State nol-prossed the remaining counts charged in the petitioner's information. *Id.* ¶ 3. The petitioner was subsequently convicted of and incarcerated for AUUW. *Id.* ¶ 5. Thereafter, the petitioner successfully petitioned to vacate his conviction of AUUW, based on the fact that his conviction was rendered void by *Aguilar*. *Id.* ¶ 6. The petitioner then petitioned for a COI, arguing that he had been convicted and incarcerated under a statute that was later declared unconstitutional. *Id.* ¶ 7. The trial court denied the petition for a COI, and the petitioner appealed. *Id.* ¶¶ 9-10.

¶ 23   On appeal, the appellate court examined various subsections of section 2-702, including subsection (g), and noted that some subsections of section 2-702 refer to " 'offenses charged in the indictment or information' " while other subsections refer to only those " 'offenses for which [the petitioner] was incarcerated.' " *Id.* ¶ 24 (quoting 735 ILCS 5/2-702(b), (d), (g)(3), (h) (West 2018)). With particular attention paid to subsections (d) and (g), which set forth the pleading and burden requirements a petitioner must satisfy to obtain a COI, the court reached the following decision:

---

[2]The State moved to cite as additional authority two recent cases from the Third District: *People v. Lesley*, 2024 IL App (3d) 210330, and *People v. Jones*, 2024 IL App (3d) 210414, both of which follow *Warner*. Neither cites the legislation seeking to amend section 2-702 that is pending in our legislature (see our discussion at *infra* ¶¶ 48-49).

"*We find the language of the statute to be clear.* To obtain a [COI], a petitioner must allege specific facts in the petition demonstrating that they are innocent of the 'offenses charged in the *** information' (subsection (d)), and prove, by a preponderance of the evidence, that they were innocent of the 'offenses charged in the *** information' (subsection (g)(3)). If the legislature had intended that a petitioner was required to allege and show only that they were innocent of the 'offenses for which he or she was incarcerated,' subsections (d) and (g)(3) would contain the same language as found in [other subsections]. Instead, the legislature chose the phrase 'offenses charged in the *** information,' demonstrating its clear intent that a petitioner must allege and prove that they are innocent of all of the offenses charged in the information." (Emphasis added.) *Id.* ¶ 28.

¶ 24 In so concluding, the court observed that, "[w]hen the legislature includes particular language in one section of a statute but omits it in another section of the same statute, courts presume that the legislature acted intentionally and purposely in the inclusion or exclusion [citations], and that the legislature intended different meanings and results." (Internal quotation marks omitted.) *Id.* ¶ 25.

¶ 25 Contrary to the State's assertion, we do not find *Warner* "well-reasoned in its analysis of the plain language of the statute." *Warner* violated the well-settled rules of statutory construction cited above. The clear intent of the legislature is to provide an available avenue for "innocent persons who have been wrongly convicted of crimes in Illinois and subsequently imprisoned" to "obtain a finding of innocence so that they may obtain relief through a petition in the Court of Claims." 735 ILCS 5/2-702(a) (West 2020). Our supreme court found that "the legislature plainly stated its intent to *ameliorate, not impose, technical and substantive obstacles* to petitioners

seeking relief from a wrongful conviction." (Emphasis added.) *Palmer*, 2021 IL 125621, ¶ 68. Yet the *Warner* court clearly imposed a major obstacle to such relief by requiring a petitioner to prove himself innocent of charges that the State never attempted to prove, because it had dismissed the charges.[3]

¶ 26    Further, *Warner* imposed this obstacle by *violating* other well-established canons of statutory construction. When a statute is *clear* and unambiguous, we cannot depart from the plain language and ordinary meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *Woodard*, 175 Ill. 2d at 443. If a statute is unambiguous *(clear)*, we will apply its terms as written and not consider extrinsic aids. *Hernandez v. Lifeline Ambulance, LLC*, 2019 IL App (1st) 180696, ¶ 11. A court should not *insert* words into a legislative enactment when the statute otherwise presents a cogent and justifiable legislative scheme. *Auto Owners Insurance v. Berkshire*, 225 Ill. App. 3d 695, 698 (1992). Specific to this theory of recovery for improper conviction and imprisonment, a "petitioner's ability to obtain a certificate of innocence is created solely by statute, [and] *we are not at liberty to engraft conditions not within the purview of the statute*." (Emphasis added.) *People v. Terrell*, 2022 IL App (1st) 192184, ¶ 40.

---

[3]We note that, while *Lesley* followed *Warner*'s error of imposing the impediment of requiring a petitioner to prove himself innocent of charges that the State never attempted to prove, it declined to impose an additional impediment that a petitioner had to disprove all charges from separate indictments resolved in a combined plea agreement in order to obtain a COI. See *Lesley*, 2024 IL App (3d) 210330, ¶¶ 42-44.

¶ 27    *Warner* found the language of the statute "*to be clear*," demonstrating the legislature's "clear intent that a petitioner must allege and prove that they are innocent of *all* of the offenses charged in the information." (Emphases added.) *Warner*, 2022 IL App (1st) 210260, ¶ 28. However, the word "all" is *not* included in the relevant statutory language. In order for a court to *insert* language into a statute, the statute must be deemed ambiguous, *i.e.*, capable of at least two reasonable interpretations. See *Hernandez*, 2019 IL App (1st) 180696, ¶ 11. *Warner* found the statutory language to be clear, yet it inserted additional language in section 2-702(g)(3) to reach its conclusion. *Warner* impermissibly inserted language into what it described as "clear" legislative language. Warner created a counterfactual conditional by substituting "clear" for "ambiguous."

¶ 28    The *insertion* of the word "all," while improper, is also irrelevant. The statutory language at issue here is that, to obtain a certificate of innocence, the petitioner must prove that he is "innocent of the offenses charged in the indictment or information." 735 ILCS 5/2-702(g)(3) (West 2018). *Warner* presumptively concluded that this means "all of the offenses *originally* charged in the indictment." However, such an assumption disregards the meaning and effect of the dismissal of charges *nolle prosequi*. Warner and the dissent impliedly add "originally" to the statute, again to make the "clear" statutory language clearer. This, despite the fact that the defendant was neither convicted of nor incarcerated on any of the dismissed charges.

¶ 29    "A motion to nol-pros is comparable to a motion to dismiss." *People v. Daniels*, 187 Ill. 2d 301, 312 (1999). "[T]he ordinary effect of a *nolle prosequi* is to *terminate the charge to which it is entered* and to permit the defendant to go wherever he pleases, without entering into a recognizance to appear at any other time." (Emphasis added.) *People v. Watson*, 394 Ill. 177, 179 (1946). "The *nolle pros terminates the charge* and requires the institution of a new and separate

proceeding to prosecute a defendant for that offense." (Emphasis added.) *People v. Sanders*, 86 Ill. App. 3d 457, 469 (1980). This court has held:

> "The dismissal of charges through *nolle prosequi* reverts the matter to *the same condition that existed before the commencement of the prosecution.* [Citation.] *Hence, no criminal charges remain pending against the defendant."* (Emphases added.) *People v. Totzke*, 2012 IL App (2d) 110823, ¶ 23.

We then distinguished the effect of a *nolle prosequi* from that of striking a charge with leave to reinstate (SOL), pursuant to which "the defendant is *still charged with the crime.*" (Emphasis added.) *Id.* ¶ 24.

¶ 30    The only offense charged in the indictment in this case is the AUUW charge to which defendant pleaded guilty; all the other offenses with which he was charged were dismissed and did not remain pending. Even inserting the improper "all" into the statutory language really makes no difference here; "all" of the offenses is the one AUUW offense. It is innocence of this charge, the one charge for which defendant was incarcerated, that defendant must prove.

¶ 31    This is not a novel theory. See *Smith*, 2021 IL App (1st) 200984, ¶ 25:

> "Another broad assertion that we reject is the State's suggestion, when questioned by the panel, that to be eligible for a COI, a petitioner might have the burden of affirmatively demonstrating his innocence even on charges that were nol-prossed by the State. *** We certainly do not read the COI statute to suggest that a petitioner would have to demonstrate his innocence of nol-prossed charges."

*Warner* declined to follow this reasoning, as it found that this aspect of the *Smith* judgment "had not been affirmatively raised by the State and *** had no bearing on the ultimate resolution of that case" such that it constituted *obiter dicta* and was not binding. *Warner*, 2022 IL App (1st)

210260, ¶ 36. This is a mischaracterization. *Obiter dicta* are remarks or opinions that are uttered by a court as an aside. *LeBron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 236 (2010). As a general rule, it is not binding as authority or precedent within the *stare decisis* rule. *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993). On the other hand, judicial *dicta* (remarks or opinions upon a point in a case argued by counsel and deliberately passed upon by the court) is entitled to much weight and should be followed unless found to be erroneous. *Id.* Clearly, the conclusion in *Smith* was judicial, not *obiter*, *dicta*. The court had questioned the State on the issue at oral argument and provided analysis of the meaning of nol-prossing a charge. *Smith*, 2021 IL App (1st) 200984, ¶ 25. This was no off-hand remark by the court and was not *obiter dicta*.

¶ 32 The meaning and effect of the dismissal of charges *nolle prosequi* also affects the application of contract law principles to a fully negotiated guilty plea. See *People v. Absher*, 242 Ill. 2d 77, 87 (2011) ("[W]e have repeatedly held that fully negotiated guilty pleas such as the one at bar are governed by principles of contract law."). The existence of a sentencing concession on the part of the State triggers the application of contract principles. *Id.* Here, the plea agreement involved a plea of guilty to the one charge of AUUW, a two-year term of incarceration, and the dismissal of all other charges. Thus, contract principles apply.

¶ 33 A substantial part of defendant's benefit from the deal was the dismissal of all other charges. By entering the plea agreement, defendant had the right to the benefit of the matter reverting "to the same condition that existed before the commencement of the prosecution" such that "no criminal charges remain pending against" him. *Totzke*, 2012 IL App (2d) 110823, ¶ 23. However, under the application of *Warner*'s analysis, defendant here would discover that, years after serving his term of imprisonment, the matter has not reverted to the preprosecution condition; the ghost of the dismissed charges would, in reality, remain pending against him, preventing him

from being compensated for being incarcerated pursuant to an unconstitutional charge. He would still be required to contend with and prove himself innocent of criminal charges that not only were never proven but were dismissed almost 20 years ago and neither prosecuted nor reinstated. The fact that they were dismissed and have not been reinstated is cited by the dissent as the appropriate benefit: "The only benefit defendant reasonably could have expected to receive from his bargain was that certain charges would be nol-prossed, meaning that 'no criminal charges remain pending against the defendant.' " *Infra* ¶ 72 (quoting *Totzke*, 2012 IL App (2d) 110823, ¶ 23). The dissent's position is paradoxical; no criminal charges remain pending against a defendant after a *nolle prosequi* yet the defendant must prove his innocence of such no-longer-pending charges in order to be compensated for his improper incarceration by the State.

¶ 34    In the film "The Princess Bride," Miracle Max's comments on Westley's health fit the dissent's characterization of these charges: "There's a big difference between mostly dead and all dead. Mostly dead is slightly alive." The Princess Bride (20th Century Fox 1987). Clearly, under *Warner*, defendant would not receive the full benefit of his bargain from his guilty plea, whereas the State would receive a windfall, that the charges were slightly alive. Based upon contract principles and the other charges being "all dead," *Smith*'s judicial *dicta* is well reasoned and persuasive.

¶ 35    The nature of section 2-702 is a civil remedy that facilitates the award of compensatory damages for wrongful imprisonment based upon innocence. Interestingly, we can analyze it as in the nature of a tort. As such, recovery would be based upon three elements of proof: (1) a duty, (2) a breach thereof, and (3) damages proximately caused. See *Milevski v. Ingalls Memorial Hospital*, 2018 IL App (1st) 172898, ¶ 28.

¶ 36    In this case, there was only one crime for which defendant was imprisoned. Ergo, there is only one instance of damages proximately caused and only one crime that requires proof of innocence thereof. It is counterintuitive to suggest that "all" the crimes listed in the *original* indictment are relevant and material when defendant cannot prove a scintilla of damages proximately caused arising from "all" those other unrefiled, unprosecuted, unconvicted, and unsentenced crimes in the indictment. The *Warner* analysis requires a defendant to present evidence not germane to his right to recover in basic tort law and creates substantial obstacles to recover under all charges for which there are, in reality, no damages. There was no prison time imposed on those other charges and, therefore, there could be no possible recovery for damages.

¶ 37    The placing of *Warner*'s requirements upon a wrongly convicted defendant imposes, rather than ameliorates, technical and substantive obstacles to relief from a wrongful conviction, in contravention of our supreme court's *Palmer* decision. In *Palmer*, the petitioner was charged with five counts of first degree murder (all related to the same victim) and one count of residential burglary of the victim's apartment that had occurred the day before the murder. *Palmer*, 2021 IL 125621, ¶ 5. After a jury trial, the petitioner was found not guilty of the residential burglary charge but guilty of first degree murder and was sentenced to life in prison on one count thereof. *Id.* ¶ 28. Eventually, DNA testing of certain evidence led, as the State explained, to the conclusion that the petitioner was "excluded as a contributor to the DNA recovered under the victim's fingernails and that 'the victim's cause of death was a violent bludgeoning by a hammer, resulting in defensive wounds to the victim, which is indicative of a physical struggle with the perpetrator.' " *Id.* ¶ 34. The State moved to dismiss the charges against the petitioner without prejudice, and the trial court vacated and dismissed all charges against the petitioner and ordered the petitioner's immediate release from custody. *Id.* ¶ 35.

¶ 38    The petitioner subsequently filed a petition seeking a COI. The State, while conceding that the new evidence established that the petitioner was not the primary assailant who killed the victim, argued, *inter alia*, "that the evidence 'does nothing to refute the argument that petitioner may be guilty of the victim's murder as an accessory or as a participant in a felony murder.' " *Id.* ¶ 44. The petitioner argued that the State "could not change its theory of petitioner's guilt for the first time in those proceedings without violating his due process rights" and that the State's attempt to raise a new theory of his guilt was barred by the doctrine of judicial estoppel. *Id.* ¶ 46.

¶ 39    The trial court denied the petitioner's petition, stating that it could not " 'find that [petitioner] has proven by the preponderance of the evidence that [petitioner] has established that he is innocent of the charge of murder.' " *Id.* ¶ 47. The court rejected the petitioner's contention that "the State was limited to arguing that petitioner was guilty of first degree murder as charged in his criminal trial." *Id.* The appellate court affirmed, concluding that "the trial court did not abuse its discretion when it found that petitioner failed to establish that he did not commit first degree murder on a theory of accountability or felony murder." *Id.* ¶ 48.

¶ 40    The supreme court described the petitioner's position on appeal as follows:

"Petitioner argues that subsection (g)(3) should be construed to require proof only of his innocence of the specific factual offense charged in his criminal case. Petitioner urges this court to reject the State's argument, accepted by the appellate court, that subsection (g)(3) requires him to prove that he is innocent of every conceivable theory of criminal liability for the offense. Because petitioner was charged with first degree murder on the basis that he personally beat the victim to death and the State now concedes that petitioner was not the principal attacker, petitioner argues that he is entitled to a certificate of innocence." *Id.* ¶ 59.

¶ 41 The supreme court agreed with the petitioner, finding that "the legislature intended that a petitioner establish his or her innocence of the offense on the factual basis charged in the indictment or information. This construction is also consistent with the legislature's express goal of providing those individuals who are wrongfully convicted with 'an available avenue to obtain a finding of innocence so that they may obtain relief through a petition in the Court of Claims.' " (Emphasis omitted.) *Id.* ¶ 64 (quoting 735 ILCS 5/2-702(g)(3) (West 2018)). The court found that it was "undisputed" that the State's theory of the petitioner's guilt "was never charged *or presented to the trier of fact* in the underlying criminal proceedings." (Emphasis added.) *Id.* ¶ 66. Because of the State's trial strategy,

> "there is no evidence or argument from either party on whether petitioner acted as an accomplice when the victim was murdered. In other words, *the record is devoid of any meaningful evidence or argument to assist a reviewing court in deciding whether first degree murder as an accomplice has been disproven by petitioner* in this case. *** As petitioner argues, he cannot be expected to have access to the evidence necessary to disprove a theory of guilt that was *never charged or presented during the original criminal proceedings*.

> Put simply, it is unreasonable to conclude that the legislature intended subsection (g)(3) to require a petitioner to prove his innocence of a novel theory of guilt that was *never charged or presented to the trier of fact*. In fact, the legislature plainly stated its intent to ameliorate, not impose, technical and substantive obstacles to petitioners seeking relief from a wrongful conviction. [Citation.] The legislature also instructed a court reviewing a petition for a certificate of innocence to give 'due consideration to difficulties of proof'

caused by the passage of time, unavailability of witnesses, the destruction of evidence, or other factors not caused by the petitioner." (Emphases added.) *Id.* ¶¶ 67-68. The court reversed "the judgments of the circuit court and the appellate court reaching the opposite conclusion, and [remanded] to the circuit court with directions to enter an order granting [the petitioner's] petition for certificate of innocence." *Id.* ¶ 80.

¶ 42 Following *Warner* in the case before us would require defendant to prove his innocence of charges that were never presented to the trier of fact, based upon a record that is axiomatically devoid of meaningful evidence. Further, any such evidence that could exist arose approximately 19 years ago. The fact that *Palmer* involved a theory of guilt not presented to the trier of fact, while this case involves charges never presented to the trier of fact, does not lessen the application and import of the supreme court's holding here.

¶ 43 If *Warner*'s conclusion that a defendant must prove his innocence of *all* charges leveled in the indictment or information in order to be granted a COI were correct, that would logically mean that a defendant would be required to prove his innocence of charges for which he was found not guilty after trial. A *not guilty* finding is not the same as a finding *of innocence*, even after a retrial on the charge a defendant was originally convicted of and incarcerated for. See *People v. Dumas*, 2013 IL App (2d) 120561, ¶ 18 ("The First District has stated that 'the plain language of section 2-702 shows the legislature's intent to distinguish between a finding of not guilty at retrial and actual innocence of the charged offenses.' [Citation.] This means that the defendant must prove by a preponderance of the evidence that he is 'actually innocent,' as opposed to circumstances in which the State presented insufficient evidence to convict."). However, our supreme court has not made that a requirement. In that respect, what *Palmer* did *not say* is as important as what it did say.

¶ 44     The main issue in both the appellate court (*People v. Palmer*, 2019 IL App (4th) 190148) and the supreme court *Palmer* opinions was the petitioner's argument that section 2-702(g)(3) of the Civil Code "should be construed to require that he must 'prove his innocence of the particular factual offense with which he was actually charged and that led to his wrongful conviction.' " *Palmer*, 2021 IL 125621, ¶ 51. However, the petitioner had also been found not guilty of the residential burglary charge after trial. Nowhere in either the appellate court or supreme court opinion is there any mention, let alone analysis, of evidence of innocence of the charge of residential burglary that had been filed against the petitioner in the same indictment.[4] Pursuant to the *Warner* theory, the petitioner in *Palmer* would have been required to prove his innocence of that charge, too. The fact that the petitioner had been found not guilty of that offence after trial would not negate that requirement.

¶ 45     While the question raised on appeal to the supreme court was specific to the first degree murder charge, the supreme court ordered the trial court to enter an order granting the petitioner's petition for a COI. Neither the appellate court nor the supreme court ever addressed or considered the petitioner's innocence of "all" of the charges in the petitioner's indictment or information. Innocence of the residential burglary charge was irrelevant to the question of whether the petitioner should have been granted the COI, because the petitioner was incarcerated only on the first degree murder charge; that is why neither court considered innocence as to the residential burglary charge.

---

[4]The appellate court addressed burglary only as it related to one of the first degree murder charges brought under a theory of "felony murder." See *Palmer*, 2019 IL App (4th) 190148, ¶¶ 163-64. It did not address residential burglary in the context of innocence of "all" of the charges.

The supreme court ordered the issuance of the COI in the absence of any proof of innocence of the residential burglary charge because that charge was irrelevant to the issuance of the COI. While *Palmer* preceded *Warner*, we do not believe that the supreme court would have ignored the absence of evidence of innocence regarding residential burglary and ordered the issuance of a COI if the language of section 2-702(g)(3) clearly and plainly required proof of innocence of "all" offenses.

¶ 46    Similarly, the petitioner in *Washington* was charged with armed robbery and murder; after a trial resulted in a hung jury, the petitioner pleaded guilty to first degree murder. *Washington*, 2023 IL 127952, ¶¶ 1, 3. The disposition of the armed robbery charge is unclear. The trial court asserted that "petitioner entered a plea of guilty to first degree murder" and was sentenced "to serve a term of 25 years' imprisonment." *People v. Washington*, No. 93-CR-14676, slip order at *1 (Cir. Ct. Cook County, Oct. 31, 2016). The appellate court said that the petitioner and his codefendant "were convicted of the May 1993 armed robbery and murder." *People v. Washington*, 2020 IL App (1st) 163024, ¶ 3. The supreme court merely stated that "petitioner accepted the State's offer of a 25-year sentence in exchange for a guilty plea." *Washington*, 2023 IL 127952, ¶ 4. After the petitioner served his sentence, his conviction was reversed and the charges against him were dismissed, due to allegations that police officers coerced and tortured him into signing a prewritten statement falsely confessing to the murder. *Id.* ¶¶ 1, 5. Petitioner sought a COI, which the trial court denied. The appellate court affirmed the denial, finding in part that the petitioner caused or brought about his conviction by pleading guilty and was not entitled to a COI. *Id.* ¶ 22.

¶ 47    The question before our supreme court involved the effect of a guilty plea on a petition for a COI and whether the petitioner "voluntarily caused or brought about his conviction with his guilty plea." *Id.* ¶ 25. The court ultimately reversed the judgment of the appellate court, concluding that "the plain language of the statute does not categorically bar an innocent petitioner who pleaded

guilty from obtaining a certificate of innocence" (*id.* ¶ 62), and remanded the cause to the trial court "with directions to enter an order granting petitioner a certificate of innocence." *Id.* ¶ 64.

¶ 48 Again, as in *Palmer*, none of the *Washington* courts made any mention of the armed robbery charge in the analyses of whether the petitioner had met the necessary statutory requirements to obtain a COI by a preponderance of the evidence. As noted above, the courts did not even agree as to the charge's disposition. Yet the supreme court directed the trial court to grant the petitioner a COI. We note that the supreme court issued its opinion in *Washington* a year after the First District issued its opinion in *Warner*. The fact that the supreme court paid no attention to the proof of innocence of the armed robbery charge in its analysis before directing the trial court to issue a COI is strong evidence that the supreme court does not find *Warner*'s analysis to be compelling, let alone controlling or precedential.

¶ 49 We also note that the legislature has been active in an attempt to amend section 2-702. A reviewing court may take judicial notice of pending legislation. See *Karbin v. Karbin*, 2012 IL 112815, ¶ 46 n.2. House Bill 1015 of the 103rd Illinois General Assembly, 2023 Session, which was passed by the House on March 23, 2023, amends section 2-702(d) as follows:

> "(d) The petition shall state facts in sufficient detail to permit the court to find that the petitioner is likely to succeed at trial in proving that the petitioner is innocent of the *alleged* offenses *for which he or she was convicted* ~~charged in the indictment or information~~ or his or her acts or omissions *for which he or she was convicted* ~~charged in the indictment or information~~ did not constitute a felony or misdemeanor against the State of Illinois, and the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction. The petition shall be verified by the petitioner." (Additions shown in italics, deletions in strikethrough). 103d Ill. Gen. Assem., House Bill 1015, 2023

Sess.

The Illinois Senate is currently considering an amended version of House Bill 1015, which would amend section 2-702(d) as follows:

"(d) The petition shall state facts in sufficient detail to permit the court to find that the petitioner is likely to succeed at trial in proving that the petitioner is innocent of the *alleged* offenses *for which he or she was convicted or adjudicated a delinquent* ~~charged in the indictment or information or his or her acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State of Illinois~~, and the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction *or juvenile delinquency adjudication.* The petition shall be verified by the petitioner." (Additions shown in italics, deletions in strikethrough). 103d Ill. Gen Assem., House Bill 1015, Senate Amend. 1, 2023 Sess.

¶ 50     The proposed amendments to section 2-702(d) are not now exactly the same; however, both versions would remove the "charged in the indictment or information" language that *Warner* grasped at for its interpretation and holding. Where the legislature chooses not to amend the terms of a statute after a judicial construction, "it will be presumed that it has acquiesced in the court's statement of legislative intent." *Board of Education of City of Chicago v. Moore*, 2021 IL 125785, ¶ 30. While the proposed amendments to section 2-702(d) are not dispositive of the issue here on appeal, the lack of the legislature's acquiescence to the *Warner* reasoning and decision is manifest. It makes no sense to adopt case law reasoning regarding legislative intent when the legislature is actively demonstrating that it disagrees with that very rationale.

¶ 51     Based upon the foregoing, we conclude that *Warner*, instead of ameliorating technical and substantive obstacles to petitioners seeking relief from a wrongful conviction, imposed the

following impediments that *Palmer*, *Washington*, and established case law have proscribed: (1) requiring the negation of proof of charges that are patently *not proven* but are implicitly presumed by *Warner* to be proven; (2) changing the legal and contractual effect of a dismissal *nolle prosequi*; (3) subverting contract law as it is applied to negotiated guilty pleas; (5) subverting tort law and the necessary proofs required to entitle a plaintiff to recover damages; (6) raising straw men by requiring refutation of charges for which there are *no* damages proximately caused; (6) requiring proof of innocence of charges based upon a record in which witnesses were not called, evidence was not admitted, findings of controverted fact were not made, and no damages were proximately caused; and (7) failing to *broadly interpret* the statute as our supreme court has directed us to do in *Palmer and Washington*.[5] Instead of removing impediments, *Warner* raised substantial impediments that *Lesley and Jones* have reinforced, contrary to the legislature's intent to compensate wrongly incarcerated defendants and to the strictures of *Palmer* and *Washington*. The *Warner* rationale disregards the legislature's intent and makes the "available avenue to obtain a finding of innocence" little more than an illusion.

¶ 52    The dissent fails to understand that, by finding that *Warner*'s reasoning is "sound" (*infra* ¶ 66), it has adopted *Warner*'s counterfactual conditional that the statutory language here is

---

[5]While acknowledging our supreme court's directive to broadly interpret the statute, the dissent finds that the directive "does not allow us to circumvent the *statute's plain language*, which requires an individual seeking a certificate of innocence to establish his innocence as to *all* offenses charged in the indictment. 735 ILCS 5/2-702(g)(3) (West 2020)." (Emphases added and in original.) *Infra* ¶ 70. We reiterate that the plain language of section 2-702(g)(3) does not contain the word "all." See 735 ILCS 5/2-702(g)(3) (West 2020).

"clear" but in need of clarity. See *supra* ¶ 27. Thus, the dissent's analysis is on a predetermined incorrect path that fails to heed both the legislature's findings and intent and our supreme court's findings in *Palmer*. Every one of the dissent's determinations sustains and supports, rather than ameliorates, impediments to relief from a wrongful conviction. The adoption of the counterfactual conditional also blinds the dissent to the meaning of the legislature's ongoing attempt to amend the statute to remove the language that *Warner* misinterpreted and the dissent relies on here.

¶ 53    Occam's razor, or the law of parsimony, posits that, when faced with competing explanations for the same phenomenon, the simplest is likely the correct one. See *Occam's Razor*, Conceptually, https://conceptually.org/concepts/occams-razor (last visited May 28, 2024) [https://perma.cc/4HZ6-5ZG5]. The simplest answer here is to redact the terms inserted by the *Warner* court based upon a counterfactual conditional. Defendant should neither be burdened with having to adjudicate his innocence of charges that the State failed or refused to convict him of the first time around, nor be required to prove his innocence about matters that have no relation to the amount of his damages for his wrongful incarceration.

¶ 54    The State also contends that defendant failed to meet his burden under section 2-702(g)(4) of the Civil Code, which requires a defendant seeking a COI to prove by a preponderance of the evidence that he "did not by his *** own conduct voluntarily cause or bring about his *** conviction." 735 ILCS 5/2-702(g) (West 2020). According to the State, defendant "actively participated in his prosecution" by pleading guilty to an offense. The State relies on *Washington*, 2020 IL App (1st) 163024, ¶ 25, in which the First District held that "[a] defendant who has pled guilty 'cause[d] or [brought] about his or her conviction' (735 ILCS 5/2-702(g)(4) (West 2016)) and is not entitled to a certificate of innocence."

¶ 55    Defendant argues that the State has raised this issue for the first time on appeal and has, therefore, forfeited the issue on appeal. See *People v. Pursley*, 2022 IL App (2d) 210558, ¶ 68 ("Arguments not raised before the trial court are generally forfeited on appeal."). Our review of the record leads us to conclude that the State has, indeed, forfeited this issue.

¶ 56    In its initial brief, the State provides no citations to the record indicating that this issue was raised in the trial court. In its reply brief, the State cites its combined motion to dismiss defendant's petition, dated February 22, 2022, in which it listed the section 2-702(g) requirement that a petitioner did not by his own conduct voluntarily cause or bring about his conviction. However, its only argument regarding that requirement was that, if the *Smith* court's "reasoning is correct, then there would be no need for paragraph (4) as a requirement for the defendant to have to prove in order to obtain a certificate of innocence." The State also cited its answer to defendant's amended petition, dated April 26, 2022; however, this merely contains the conclusory statement that the State "denies that [defendant] can satisfy his burden of proof pursuant to 735 ILCS 5/2-702(g)(4)." The bystander's reports of the arguments made before the trial court contain no mention of any argument regarding section 2-702(g)(4).

¶ 57    Clearly, the State did nothing more than mention the existence of the section 2-702(g)(4) requirement and deny that defendant would be able to fulfill it. This does not rise to the level of raising the issue below. With its failure to raise this issue in the trial court, we find that the State forfeited the issue on appeal.

¶ 58    Even if we had not found forfeiture, we would not find any error in the trial court. The sole basis for the State's argument on appeal is the conclusion of the appellate court in *Washington* that "[a] defendant who has pled guilty 'cause[d] or [brought] about his or her conviction' (735 ILCS 5/2-702(g)(4) (West 2016)) and is not entitled to a certificate of innocence." 2020 IL App (1st)

163024, ¶ 25. However, our supreme court reversed the appellate court in *Washington*, holding that "petitioners who pleaded guilty are not categorically barred from seeking certificates and the appellate court erred in so finding." *Washington*, 2023 IL 127952, ¶ 36. Thus, the State's contention here would have been unavailing.

¶ 59                                  III. CONCLUSION

¶ 60    For these reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 61    Affirmed.

¶ 62    JUSTICE HUTCHINSON, dissenting:

¶ 63    The majority's opinion misinterprets subsection (g)(3) of section 2-702 of the Civil Code, and therefore, I respectfully dissent.

¶ 64    As the majority's opinion provides, subsection (g) lays out the elements needed to obtain a COI. 735 ILCS 5/2-702(g) (West 2020). Specifically, a petitioner must prove by a preponderance of the evidence that:

> "(1) the petitioner was convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;

> (2)(A) the judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either the petitioner was found not guilty at the new trial or the petitioner was not retried and the indictment or information dismissed; or (B) the statute, or application thereof, on which the indictment or information was based violated the Constitution of the United States or the State of Illinois;

(3) the petitioner is innocent of the offenses charged in the indictment or information or his or her acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State; and

(4) the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction." 735 ILCS 5/2-702(g) (West 2020).

¶ 65    Section 2-702(g)(3) indicates that a petitioner must prove by a preponderance of the evidence that he was innocent of the "*offenses* charged in the indictment." (Emphasis added.) *Id.* § 2-702(g)(3). Giving this language its plain and ordinary meaning, it is clear the legislature intended that a petitioner prove by a preponderance of the evidence his innocence of all offenses charged in the indictment, not just those offenses he was convicted of and incarcerated for.

¶ 66    This interpretation fits squarely within the First District's recent holding in *Warner*, 2022 IL App (1st) 210260. Unlike the majority, I find *Warner*'s reasoning to be sound. In *Warner*, the petitioner was charged with multiple offenses. *Id.* ¶ 2. One of those offenses was AUUW. *Id.* The petitioner pleaded guilty to that offense, and in return, the State nol-prossed the remaining counts charged in the information. *Id.* ¶ 3. The petitioner was subsequently convicted of and incarcerated for AUUW. *Id.* ¶ 5. Thereafter, the petitioner successfully petitioned to vacate his conviction of AUUW, pursuant to *Aguilar*. *Id.* ¶ 6. The petitioner then filed for a COI, arguing that he had been convicted of and incarcerated for an unconstitutional offense, *i.e.*, AUUW. *Id.* ¶ 7. The petitioner failed to allege that he was innocent of any other offense charged in the information. *Id.* The trial court denied the petition for a COI, and the petitioner appealed. *Id.* ¶¶ 9-10.

¶ 67    On appeal, the appellate court examined various subsections of section 2-702, including subsection (g), and noted that some subsections of section 2-702 refer to " 'offenses charged in the indictment or information' " while other subsections refer to only those " 'offenses for which [the

petitioner] was incarcerated.' " *Id.* ¶ 24 (quoting 735 ILCS 5/2-702(b), (d), (g)(3), (h) (West 2018)). With particular attention paid to subsections (d) and (g), which set forth the pleading and burden requirements a petitioner must satisfy to obtain a COI, the court reached the following decision:

"We find the language of the statute to be clear. To obtain a [COI], a petitioner must allege specific facts in the petition demonstrating that they [*sic*] are innocent of the 'offenses charged in the *** information' (subsection (d)), and prove, by a preponderance of the evidence, that they were innocent of the 'offenses charged in the *** information' (subsection (g)(3)). If the legislature had intended that a petitioner was required to allege and show only that they were innocent of the 'offenses for which he or she was incarcerated,' subsections (d) and (g)(3) would contain the same language as found in [other subsections]. Instead, the legislature chose the phrase 'offenses charged in the *** information,' demonstrating its clear intent that a petitioner must allege and prove that they are innocent of all of the offenses charged in the information." *Id.* ¶ 28.

¶ 68     The *Warner* court noted that, "[w]hen the legislature includes particular language in one section of a statute but omits it in another section of the same statute, courts presume that the legislature acted intentionally and purposely in the inclusion or exclusion [citations], and that the legislature intended different meanings and results [citations]." (Internal quotation marks omitted.) *Id.* ¶ 25. The majority's analysis ignores this presumption. Here, the legislature used the phrase "offenses charged in the indictment" in subsection (g)(3), but used the phrase "all offenses for which he or she was incarcerated" in subsections (b) and (h). When the legislature used that different language elsewhere throughout section 2-702, that use was for a different purpose. See *Brown*, 2022 IL App (4th) 220171, ¶ 24 (after noting that the plain language of section 2-702(d)

and (g)(3) requires a petitioner to establish his innocence of all charged offenses, the court observed that, "[a]lthough other subsections of the statute use different language, such subsections do not specify the pleading and burden requirements for obtaining a [COI]").

¶ 69 Additionally, the *Warner* rationale was recently adopted by the third district in *People v. Lesley*, 2024 IL App (3d) 210330, and *People v. Jones*, 2024 IL App (3d) 210414. In both cases, the third district appropriately found the statutory language to be clear, and held that subsection (g)(3) required a petitioner to prove his or her innocence of all offenses charged in the indictment. *Lesley*, 2024 IL App (3d) 210330, ¶ 41; *Jones*, 2024 IL App (3d) 210414, ¶ 17. In so holding, the court in *Lesley* noted that "this interpretation is consistent with the legislative intent—to provide the wrongfully incarcerated with an avenue to obtain relief in the Court of Claims—and avoids absurd results," and it stated that " '[w]e doubt the legislature envisioned compensating people who could have been lawfully imprisoned for more serious offenses but who happened to plead guilty to a lesser offense that was later recognized to be void *ab initio*.' " *Lesley*, 2024 IL App (3d) 210330, ¶ 6 (quoting *Brown*, 2022 IL App (4th) 220171, ¶ 25).

¶ 70 This interpretation of subsection (g)(3) also does not run afoul of our supreme court's holding in *Palmer*. As the majority notes, our supreme court has directed us to broadly interpret the statute. See *Palmer*, 2021 IL 125621, ¶ 64. However, that direction does not allow us to circumvent the statute's plain language, which requires an individual seeking a certificate of innocence to establish his innocence as to *all* offenses charged in the indictment. 735 ILCS 5/2-702(g)(3) (West 2020). Moreover, the court in *Palmer* held that the trial court erred in denying the petitioner a COI as to first degree murder where the court required the petitioner to prove his innocence of murder on a theory of liability—namely, accomplice liability—that the State did not

present at trial. *Palmer*, 2021 IL 125621, ¶¶ 47-48, 71-73. That aspect of *Palmer*'s holding is inapplicable here, where there is no issue of shifting theories of liability.

¶ 71    The majority also argues that "what *Palmer* did not say is as important as what it did say," in that the petitioner in *Palmer* was found not guilty of residential burglary after trial, yet the supreme court did not require him to prove his innocence of that charge. *Supra* ¶ 43. However, as the majority also notes, the question raised on appeal to the supreme court was specific to the first degree murder charge. It is inappropriate to depart from the plain language of *Palmer*'s holding. As our supreme court plainly stated: "because the word 'offenses' is modified by the phrase 'charged in the indictment or information,' the legislature intended that a petitioner establish his or her innocence of the offense on the factual basis *charged* in the indictment or information." (Emphasis in original.) *Palmer*, 2023 IL 125621, ¶ 64.

¶ 72    The majority also argues that my interpretation of section 2-702(g)(3) will deprive defendant of receiving the full benefit of his bargain from the guilty plea, as "the matter has not reverted to the preprosecution condition" and "the ghost of the dismissed charges ***, in reality, remain pending against him." *Supra* ¶ 33. I respectfully disagree. The only benefit defendant reasonably could have expected to receive from his bargain was that certain charges would be nol-prossed, meaning that "no criminal charges remain pending against the defendant." *People v. Totzke*, 2012 IL App (2d) 110823, ¶ 23. Black's Law Dictionary defines "criminal charge" as "[a] formal accusation of an offense as a preliminary step to prosecution." Black's Law Dictionary (10th ed. 2014). Currently, no formal accusation of an offense is pending against defendant. The State lacks the power to prosecute him on these offenses. Because of this, he has received the benefit of his bargain.

¶ 73 I do acknowledge the proposed legislation that was passed by the House on March 23, 2023. See 103d Ill. Gen. Assem., House Bill 1015, 2023 Sess. Although this proposed legislation would tidily resolve what is required under section 2-702(g)(3), it has not yet passed the Senate. Accordingly, we are obligated to interpret the law as it is rather than how it might be in the future.

¶ 74 As a final note, the majority references the concept of Occam's razor, which proposes that the simplest answer is most often the correct one. See *Occam's Razor*, Conceptually, https://conceptually.org/concepts/occams-razor (last visited May 28, 2024) [https://perma.cc/4HZ6-5ZG5]. Ironically, after a lengthy and involved rationalization, the majority avers that the simplest answer is that the legislature intended for a petitioner to prove his innocence for only the offense or offenses he was convicted of and incarcerated for in order to obtain a certificate of innocence. However, contrary to the majority's position, the simplest answer here is that, by stating that a petitioner must prove by a preponderance of the evidence that he was innocent of the "offenses charged in the indictment," the legislature did in fact intend for a petitioner to prove his innocence of the offenses charged in the indictment. Not the offense or offenses a petitioner was convicted of and incarcerated for. Although the majority may find my interpretation of subsection (g)(3) restrictive, it is the interpretation that I believe is true to the statutory language, which is the best indicator of legislative intent. See *Palmer*, 2021 IL 125621, ¶ 53.

¶ 75 For these reasons, I respectfully dissent.

*People v. Green*, **2024 IL App (2d) 220328**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 21-MR-2028; the Hon. John G. Dalton, Judge, presiding. |
| **Attorneys for Appellant:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Victoria E. Jozef, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | Joel A. Flaxman and Kenneth N. Flaxman, of Kenneth N. Flaxman P.C., of Chicago, for appellee. |